UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY MURPHY,                             Case No. 10-11676

    Plaintiff,                      David M. Lawson
vs.                                         United States District Judge

SEAN LOCKHART, CFA Administrative           Michael Hluchaniuk
Assistant, THOMAS BIRKETT, SMF              United State Magistrate Judge
Warden, RAY BOWERSON, Resident
Unit Manager, MICHAEL KRAJNIK
Resident Unit Manager, SARAH BEARSS,
Assistant Resident Unit Supervisor,
CHERYL BERRY, General Office Assistant/
Mailroom Clerk, CATHERINE S. BAUMAN,
LMF Warden, and JERI ANN SHERRY,
Regional Prison Administrator,

    Defendants.
_____/

**REPORT AND RECOMMENDATION
MOTIONS FOR SUMMARY JUDGMENT (Dkt. 28),
FOR PROTECTIVE ORDER (Dkt. 29), TO STRIKE (Dkt. 39),
AND FOR RELIEF UNDER RULE 56(d) (Dkt. 41)**

## I. PROCEDURAL HISTORY

Plaintiff, an inmate currently at the Baraga Maximum Correctional Facility,

brings this action under 42 U.S.C. § 1983, claiming violations of his rights under

the United States Constitution.  (Dkt. 1).  Plaintiff alleges that his placement in

long-term and/or indefinite segregation is unconstitutional; that the MDOC is

prohibiting him from communicating with his friends and family, hampers his

1

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

ability to practice his Christian religion in violation of his First Amendment rights; that he suffers physical and mental health problems; and that the MDOC's mail policy is unconstitutional. *Id.* On May 19, 2010, this case was referred to the undersigned for all pretrial purposes by District Judge David M. Lawson. (Dkt. 14).

On August 4, 2010, defendants filed a motion for summary judgment. (Dkt. 28). Plaintiff filed a response to the motion for summary judgment on September 17, 2010. (Dkt. 44). In addition, plaintiff filed a motion to strike defendants' affidavits. (Dkt. 39). Defendants filed a response to the motion to strike on September 22, 2010. (Dkt. 45). Plaintiff filed a reply on October 14, 2010. (Dkt. 47). Plaintiff also filed a motion for relief under Rule 56(d).[1] (Dkt. 41). Defendants filed a response on September 24, 2010. (Dkt. 46).

These matters are now ready for report and recommendation. For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion to strike defendants' affidavits be **DENIED**, that plaintiff's Rule 56(d) motion be **DENIED**, and that defendants' motion for summary judgment be **GRANTED** in part and **DENIED** in part. More specifically, the undersigned **RECOMMENDS** that:

---

[1] Federal Rule of Civil Procedure 56(d), formerly, Rule 56(f), was amended as of December 1, 2010.

2

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

A.     As to defendant Werner, the motion for summary judgment based on failure to exhaust administrative remedies should be **DENIED**;

B.     As to defendants Bauman and Sherry, the motion for summary judgment based on failure to exhaust administrative remedies should be **GRANTED** and the claims **DISMISSED** with prejudice;

C.     As to defendants Birkett, Bearss, and Krajnik, the motion for summary judgment on the First Amendment retaliation claims should be **GRANTED**;

D.     As to the mail processing and related constitutional claims, as to all defendants, the motion for summary judgment should be **GRANTED**;

E.     To the extent that plaintiff makes claims against any defendant in their official capacity, such claims should be **DISMISSED**; and

F.     Defendants' motion for summary judgment based on qualified immunity should be **DENIED**.

Finally, to the extent that the Court ultimately permits any of plaintiff's claims to go forward, defendants' motion for protective to preclude discovery until such time as the motion for summary judgment is resolved, should be **DENIED**.

## II.     FACTUAL BACKGROUND

Murphy is currently confined at Baraga Maximum Security Facility (AMF) in Baraga, Michigan.  He was housed at Kinross Correctional Facility (KCF) in

Kincheloe, Michigan in 2007 when he partially executed a long-term escape plan. Murphy was classified to Administrative Segregation and deemed a serious escape risk, after officials discovered the tunnel Murphy and his cellmates managed to dig from their cell to the outer perimeter of KCF.  Prison officials cooperated with a writer whose article about the escape attempt appeared in the August 2008 issue of Esquire Magazine.  Plaintiff was interviewed and is extensively quoted in the article, describing the manner in which he manipulated prison staff and other prisoners over the course of an extended time period, managing to gain the trust of certain correctional officers to carry out various acts related to the escape attempt. (Dkt. 1, Ex. B).

## III.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Rule 56 limits the materials the Court may consider in deciding a motion under the rule: "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th Cir. 1995) (citation omitted). Moreover, affidavits must meet certain requirements:

> A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit. The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held "that documents submitted in support of a motion for summary judgment must satisfy the requirements of Rule 56(e); otherwise, they must be disregarded." *Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56

motion, the Court should not consider unsworn or uncertified documents, *id.*, unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969 (6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co. v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222, 225-226 (6th Cir. 1994). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).[2]

    B.    <u>Exhaustion of Administrative Remedies</u>

        1.    Legal principles

In *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910 (2007), the United States Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." *Id.* at 923. The Court defined the level of detail necessary to exhaust as simply compliance with the administrative grievance process. *Id.* Moreover, the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if

---

[2] The undersigned concludes that defendants' affidavits do not violate Rule 56 as contended by plaintiff in his motion to strike. (Dkt. 39). Thus, this motion should be denied.

6

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

plaintiff complied with the applicable MDOC grievance procedure and defendants bear the burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed.Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.").

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden-the plaintiff on a claim for relief of the defendant on an affirmative defense-his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

2.      Purpose of exhaustion requirement.

The Supreme Court defines proper exhaustion under 42 U.S.C. § 1997e(a) as "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 quoting, *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in

7

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

original).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id*. at 90-91.  The Supreme Court also observed that "[t]he PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'"  *Id*. at 93, quoting, *Porter v. Nussle*, 534 U.S. 516, 525 (2002) (alteration omitted).  Exhaustion serves a dual purpose: it gives prisoners "an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Id*. at 94. Additionally, the exhaustion requirement "has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record."  *Jones*, 127 S.Ct. at 915-16.

Before *Jones* invalidated the additional exhaustion procedures placed on prisoner civil rights suits by the Sixth Circuit, a prisoner was required to "file a grievance against the person he ultimately seeks to sue," and exhaust the claim as to each defendant associated with the claim.  *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001).  The critical holding in Jones was that the PLRA does not impose additional exhaustion procedures or requirements outside the prison's grievance

procedures.  As observed in *Jones*, the primary purpose of a grievance is to alert

prison officials of a particular problem. *Jones*, 127 S.Ct. at 923; *see also Bell v.*

*Konteh*, 450 F.3d 651, 651 (6th Cir. 2006) ("[I]t is sufficient for a court to find that

a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment

or misconduct that forms the basis of the constitutional or statutory claim made

against a defendant in a prisoner's complaint.").  In *Baker v. Vanderark*, 2007 WL

3244075, *7 (W.D. Mich. 2007), the court held that, under the PLRA and

*Woodford*, "both parties are obligated to raise objections in the administrative

proceedings in order for the issue to be properly before a reviewing court."  The

*Baker* court also concluded that a "fair interpretation of PD 03.02.103 gives the

Grievance Coordinator discretion to accept or reject a grievance that fails to

identify specific defendants on the basis of the grievance being vague."  *Id*.

### 3.    Defendant Werner

Plaintiff alleges Werner altered his monthly Administrative Behavior

Review form in May of 2007 and was motivated to do so by a lawsuit Murphy

filed against a prison employee in 1989.  Grievances submitted through Step III are

documented through MDOC's Prisoner Affairs Section for each prisoner.

Plaintiff's grievance summary shows that he completed the grievance process on a

number of grievances in 2007.  (Dkt. 28-4).  However, none of these grievances

involved the allegations or claim made against Werner.  Plaintiff's exhausted 2007

grievances are as follows: (1) SMF-07-1571-17B, a claim that Property Room Officer McIntire retaliated against Murphy for exercising his right to seek legal redress; (2) SMF-07-07-1461-15A, a claim that mailroom staff inappropriately refused to send plaintiff's privileged mail to the media; (3) SMF-07-07-1406-12D2, a claim that Health Care staff was not adequately addressing plaintiff's needs; (4) SMF-07-06-1187-14f, a claim that the librarian refused to make legal copies for plaintiff in retaliation for his exercise of protected conduct; and (5) SMF-07-06-1155-19e, a claim that prison staff lost plaintiff's television set.  (Dkt. 28-4).

Plaintiff also claims that Werner requested and imposed an unlawful restriction regarding the required approval for his reclassification to General Population in October of 2008.   Defendant also identifies the following grievances exhausted through Step III of the grievance procedure in 2008, none of which have anything to do with this claim against Werner: (1) SMF-08-12-2434-15a, regarding mail rejections; (2) SMF-08-12-2373-15a, regarding a mail rejection; (3) SMF-08-09-1623-17b, regarding mail rejection; (4) SMF-08-09-1592-27b, regarding a mail rejection; (5) SMF-08-08-1374-02a, regarding termination from a prison job assignment; (6) SMF-08-08-01441-15e, regarding the untimely processing of mail; (7) SMF-08-01-125-15f, regarding mail processing; and SMF-08-01-110-15d, alleging he was overcharged for outgoing legal mail.  (Dkt.

28, Ex. 2).

Plaintiff contends, however, that he submitted a grievance on this issue in January 2008 and exhausted all three steps of the process, although he never received a response to his Step III appeal.  (Dkt. 44, Exs. 4-5) (SMF 08-01-0095-22A).  In this grievance, plaintiff complains about his classification in 2007 to Administrative Segregation for being a "serious escape risk" resulting from an attempted escape.  He complains that he was improperly held in segregation with an RPA hold and that his release improperly required the prior approval of the RPA.  (Dkt. 44-1, p. 12).  In Step III, plaintiff specifically mentions Werner changed his May 14, 2007 Segregation Behavior Review to show an RPA hold.  (Dkt. 44-1, p. 23).  Defendants do not address this grievance, apparently because they are taking the position that it was not exhausted through Step III since it is not listed on the grievance inquiry provided.  There appears to be a genuine issue of material fact that plaintiff grieved these issues and completed the grievance process through Step III.  (Dkt. 44, Ex. 2, pp. 40-41; Dkt. 44-1, Exs. 4-5).  Thus, defendant has not satisfied his burden of establishing that plaintiff failed to exhaust his administrative remedies.

4.   Defendants Bauman and Sherry

As to Bauman and Sherry, plaintiff submitted a grievance in October of 2009 alleging the imposition of a requirement for the Regional Prison

Administrator's approval for his reclassification to general population.  (Dkt. 28-5).  He identified Bauman, Sherry, and the Deputy Director of MDOC's Correctional Facilities Administration (CFA).  Plaintiff's grievance was rejected as untimely at Steps I and II because he complained of acts allegedly taken in October of 2008.  These rejections were upheld at Step III.  (Dkt. 28-5).

Plaintiff claims that he first became aware of the issue in September of 2009.  This contention was rejected by the Grievance Coordinator, who noted that plaintiff had been aware of the requirement for RPA approval in October of 2008.  (Dkt. 28-5).  Defendants also point out that plaintiff's Segregation Behavior Review forms from that time frame, which are signed by the prisoner, reflect the requirement for RPA approval in addition to the Warden and Security Classification (SCC).  (Dkt. 28-7).

Plaintiff has not offered any evidence to suggest that those rejections were improper and, therefore, has failed to create a genuine issue of material fact.  In his Rule 56(d) motion and affidavit, he does not claim to need discovery on this point.  (Dkt. 41).  Under *Woodford*, plaintiff cannot have exhausted any claims pursuant to those grievances because he did not comply with the grievance policy.  *See e.g.*, *Surles v. Andison*, 2009 WL 1607621, *7 (E.D. Mich. 2009).  Thus, the undersigned suggests that defendants Bauman and Sherry have satisfied their burden of proving that plaintiff failed to exhaust his administrative remedies regarding these rejected grievances.

12

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

Ordinarily, a dismissal based on failure to exhaust administrative remedies is made without prejudice. *See e.g.*, *Hicks v. Harrington*, 2008 WL 4791916 (E.D. Mich. 2008). However, "a claim that has been properly rejected by the prison grievance system on procedural grounds should be dismissed from the plaintiff's complaint with prejudice." *Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006), overruled on other grounds, *Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). This is so because "[o]nce a prison formally denies an inmate's grievance for untimeliness, and either the inmate does not challenge the basis for that decision or the court upholds the decision, the inmate's failure to exhaust is no longer 'a temporary, curable, procedural flaw.'" *Id.*

This issue has not been squarely addressed by the Sixth Circuit[3] and the

---

[3] Other district courts within the Sixth Circuit have reached similar conclusions since the undersigned's original Report and Recommendation was issued in April 2010. In *Roberson v. Martens*, 2010 WL 3779544, *7 (W.D. Mich. 2010), the Magistrate Judge declined to recommend dismissal with prejudice because the rejection of what would surely be an untimely grievance was a future event. While the court observed that it was "virtually certain that any grievance plaintiff might now file against defendants would be rejected as untimely at Step I, and upheld on that basis at Steps II and III," it also noted that a "grievance so rejected would provide a basis for dismissing plaintiff's claims with prejudice because 'proper exhaustion still requires compliance with the grievance policy's critical procedures such as timeliness.'" *Id.*, quoting, *Vandiver v. Correctional Med. Servs., Inc.*, 326 Fed.Appx. 885, 889 (6th Cir. 2009). The Eastern District of Kentucky also recently concluded that where the plaintiff's grievance was properly rejected before suit was filed, he could not subsequently exhaust his administrative remedies properly, and such claims must be dismissed with prejudice. *Ramirez v. Hungness*, 2010 WL 1839015, *1 (E.D. Ky. 2010).

undersigned finds that the reasoning of the Tenth Circuit is persuasive. Where a grievance is rejected on procedural grounds and the merits of the grievance were never ruled on by the MDOC because of plaintiff's failure to comply with the applicable procedures, the benefits of exhaustion are not met: "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Hicks*, at \*6, quoting, *Jones*, 127 S.Ct. at 923; *see also Harris v. Ndife*, 2006 WL 3469552) ("The Supreme Court has recently held [in *Woodford v. Ngo*] that in order to satisfy the requirement that administrative remedies be exhausted prior to filing suit, those remedies must be exhausted properly and within the time frames required by the remedy process. That failure requires dismissal of his complaint, with prejudice.") (internal citations omitted); *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004) ("[I]n the absence of any justification for not pursuing available remedies, [petitioner's] failure to pursue administrative remedies while they were available precluded his federal lawsuits, and they were properly dismissed with prejudice.").

In this case, many of plaintiff's grievances against Bauman and Sherry were rejected as untimely. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can

function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90-91.  After reviewing the grievances, the appeals, and the responses, the undersigned suggests that the grievances were properly rejected and that plaintiff has not offered any evidence in response to the dispositive motions to undermine these conclusions.  Whether the procedural flaw is timeliness, the undersigned suggests that the dismissal of plaintiff's claims, to the extent they are based on rejected grievances, should be with prejudice.

      C.    <u>First Amendment Retaliation Claim Against Defendants Birkett,<br>Bearss, and Krajnik</u>.

Plaintiff also asserts a First Amendment retaliation claim against defendants Birkett, Bearss and Krajnik based on an assertion that the defendants terminated him from a prison job assignment on July 31, 2008 in retaliation for his exercise of protected activity.  (Dkt. 1 at ¶¶ 56-68).  The protected activity in question is plaintiff's cooperation and participation in a media interview regarding his attempted escape from prison.  Defendants do not seem to dispute that this is protected activity under the First Amendment. Rather, defendants identify the "real issue" as the alleged lack of the requisite nexus between the protected activity and the job assignment termination.

Plaintiff was given the job assignment on May 21, 2008.  The assignment became a "30-day conditional" assignment on June 30, 2008 following plaintiff's

first work evaluation, with the evaluator noting that the prisoner "continues to be out moving around during officer escorts after numerous warnings."  On July 29, 2008, a Security Classification committee review was conducted by Bearss, Birkett, and Krajnik.  (Dkt. 28-11, p. 3).  By the time his July 31, 2008 monthly work evaluation came around, plaintiff had been found in possession of contraband which was uncovered following a routine search.  He was terminated from the assignment on July 31, 2008, with the evaluator citing the search and indicating the prisoner had taken the items for his personal use while on the job assignment. (Dkt. 28, Ex. 8, 8(a) and 8(b); Ex.10 at ¶ 6; Ex. 11 at ¶ 6; and Ex. 12 at ¶ 7).[4]

---

[4] Notably, as a general rule, a prisoner has no constitutional right to a prison job or a particular prison program. *Tate v. Howes*, 2009 WL 1346621, *5 (W.D. Mich. 2009), citing, *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1995) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, 1998 WL 69810, *2 (6th Cir. 1998) (no constitutional right to educational classes); *Tribell v. Mills*, 1994 WL 236499, *1 (6th Cir. 1994) ( "[N]o constitutional right to vocational or educational programs"). The only seeming exception, inapplicable here, is found in *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005).  The Court concluded that the loss of a job could constitute sufficiently adverse action where it was inextricably tied to the denial of access to courts claim.  That is, in *Siggers-El*, the loss of a high-paying job directly affected the prisoner's ability to pay his lawyer for assisting him with the appeal of his criminal conviction, one of the three categories of litigation protected under *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  Nothing in this case implicates plaintiff's constitutional

In response, plaintiff argues that he was told by Bearss that the June 30, 2008 CSJ-363 form would not be placed in his prisoner file because it had been completed prematurely, contrary to the two-month initial review set forth in PD 05.01.100. (Dkt. 44, p. 15). Now, according to plaintiff, defendants improperly try to use this form to support their argument that he was terminated for cause. Plaintiff challenges the authoritativeness of the form and its integrity and claims he could produce supporting evidence as set forth in his Rule 56(d) motion. (Dkt. 41). Plaintiff argues that, as set forth in his Rule 56(d) affidavit, that Officer Rohn and other corrections offices will be able to provide material evidence or testimony supporting his claim that he was told that the form would not be placed in his file and that the form was completed contrary to policy. (Dkt. 41, pp. 6-7). Plaintiff also argues that defendants have not submitted any evidence to support the proffered reason for termination (possession of contraband) and this illegitimate reason is merely a pretext for his termination. (Dkt. 44, pp. 15-16). Finally, plaintiff provides affidavit evidence showing that defendants were aware of his participating in the Esquire article and had copies of it on July 31, 2008, the same date his prison work assignment was terminated. (Dkt. 44, Exs. 2, 8). Thus, plaintiff asserts summary judgment is precluded because this evidence alone shows that there is a genuine issue of material fact regarding the motive for his

---

right to access the courts.

termination.

A First Amendment retaliation claim fails as a matter of law if defendants show they would have taken the same action regardless of plaintiff's exercise of his First Amendment rights. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274 (1977). According to defendants, plaintiff had a porter position, which is a position of trust. And, while he now suggests evidence obtained through discovery will show he did not possess contraband, contrary to this position, plaintiff argued in his grievance regarding the termination that Officer Cobb had given him permission to possess the items. The grievance investigation revealed that Officer Cobb was aware that plaintiff had the fan, but had not given him permission to possess it and that he was not aware that plaintiff had the other items the prisoner had obtained using the position.

In the view of the undersigned, neither party has it exactly right. While prisoners do not lose their First Amendment rights on incarceration, an inmate's rights are subject to restriction. *Meachum v. Fano,* 427 U.S. 215, 225 (1976). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[M]aintaining institutional security and preserving internal order are essential goals that may require limitation or retraction of the retained constitutional rights...." *Bell v.*

18

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

*Wolfish*, 441 U.S. 520, 547 (1979).  Federal judges may not interfere in the daily

administration of state prisons barring substantial evidence that they have acted

disproportionately to correctional needs.  *Pell*, 417 U.S. at 827.  The Court

recognized that prison security may be compromised by allowing inmates to

become media news sources:

> Extensive press attention to an inmate who espoused a
> practice of non-cooperation with prison regulations
> encouraged other inmates to follow suit, thus eroding the
> institution's ability to deal effectively with inmates
> generally.

*Id*. at 832.  Notably, there need not be sufficient proof in the record that inmate

telephone use has actually led to an escape plot, fraud, or violence.  *Turner v.*

*Safley*, 482 U.S. 78, 93 (1987).  "Responsible prison officials must be permitted to

take reasonable steps to forestall ... threats to security, and they must be permitted

to act before the time when they can compile a dossier on the eve of a riot." *Jones*,

433 U.S. at 132-33.  The "informed discretion of prison officials that there is

potential danger may be sufficient for limiting rights even though this showing

might be unimpressive if ... submitted as justification for governmental restriction

of personal communication among members of the general public."  *Id*. at 133, n.

9.  In the absence of substantial evidence in the record that prison officials have

exaggerated their response to legitimate security concerns, courts should ordinarily

defer to the expert judgment of prison officials.  *Pell*, 417 U.S. at 827; *Safley*, 482

U.S. at 86; *Wolfish*, 441 U.S. at 551; *Mann*, 828 F.Supp. at 903.

Defendant Birkett, Warden of the Standish Correctional Facility, explains

his reaction to plaintiff's statements in the Esquire article:

> ...I did inform him that participating in the magazine
> article was a dumb thing to do as it showed how
> manipulative a person he was and it did make members
> of the Department look dumb. * * *
>
> I told Murphy that I would not recommend letting him
> out of Administrative Segregation for a long time due to
> how manipulative he was in the article, coupled with the
> large number of items found in his cell which further
> indicated his continuing manipulative behavior.

(Dkt. 28-12).  Birkett's concerns were legitimate.  This is no question that plaintiff

planned and plotted his attempted escape for two years and was nearly successful.

There also seems little doubt that plaintiff was well-practiced in the art of

manipulation of prison staff, as recounted in the Esquire article:

> Guards needed information, and Murphy fed them,
> hiding homemade wine around the prison and muttering
> tips to the Easy Unit supervisor. With his credibility
> established, the crew cemented the relationship by
> stashing several shanks in another building. Heard some
> guys talking about killing an officer, Murphy told the
> supervisor, and I know where they hid the weapons.
>
> Officers know prisoners want something when they
> snitch. Why else would they violate such a sacred and
> brutally enforced code? But protecting an officer in
> exchange for an inmate moving in with his buddy? That's
> a good trade, the mutual manipulation that maintains
> order.

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

20

> Murphy just had that way about him. People believed
> him, trusted him, and he honed that skill, using it to
> navigate the prison landscape for nearly two decades.
> This was his protection, being one who could get things
> done for others.

(Dkt. 1, Ex. B).  Plaintiff is quoted in the article as stating:

> In prison, knowing when to duck is often very valuable
> information... I've been able to avoid a lot of violence
> over the years. I don't know if you'd call it being
> manipulative, but I know how to handle myself.  You
> have to be mighty observant. I watch. I see what goes on.
> You learn to go with the flow. You listen it's a survival
> skill you develop. A lot of people don't do it very well.
> They end up being prey or predator.

(Dkt. 1, Ex. B).  Without question, plaintiff's behavior as recounted in the article,

his attempted prison escape, and his apparent continuing manipulation of staff

presented a legitimate security concern to prison officials.  And, speech that is

inconsistent with the legitimate penological interest of a correctional facility, such

as security and order, is not, as a matter of law, "protected conduct" under the First

Amendment.  *Smith v. Mosley*, 532 F.3d 1270, 1277 (11th Cir. 2008)

(Insubordinate remarks that are "inconsistent with the inmate's status as a prisoner

or with the legitimate penological objectives of the corrections system" are not

protected.).  Simply, as unprotected speech, plaintiff's speech cannot support First

Amendment retaliation claim.  *Watkins v. Kasper*, 599 F.3d 791, 797-798 (7th Cir.

2010).  Defendants are, therefore, entitled to summary judgment on this claim.

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

D.      Mail Restriction Claims

Plaintiff also asserts claims based on mail restrictions.  Two publications

sent to plaintiff at SMF were placed on the MDOC Restricted Publications List as

threats to prison safety and security and the rehabilitation of prisoners.  Plaintiff

contends the restrictions violate his First Amendment right to free speech, the First

Amendment Free Exercise Clause, the RLUIPA, procedural due process as

guaranteed by the Fourteenth Amendment, as set forth Counts II through IV of the

Complaint.  According to defendants, under the prisoner mail policy, most mail

rejections are subject to a hearing to determine whether the mail violates prison

policy.  If the hearing officer finds that the publication violates the MDOC mail

policy, he is required to forward the publication to the Warden along with the

Notice of Package/Mail Rejection and Administrative Hearing Report.  If the

Warden agrees with the assessment, he submits the documentation to the CFA

Deputy Director for a final determination.  The CFA Deputy Director, in turn,

determines whether the publication will be placed on the MDOC Restricted

Publications List.  Once a publication is placed on the Restricted Publications List,

it shall be rejected at all facilities without the need for a hearing to determine the

basis for the rejection.  (Dkt. 28, Ex. 9, ¶¶ JJ-RR).

On July 24, 2008, SMF mailroom employee C. Berry issued a Notice of

Package/Mail Rejection, notifying Murphy of the mailroom's receipt of the

"Esquire, 2008 magazine issue."  Citing the prisoner mail policy, Berry wrote that

the article was a threat to prison security and the rehabilitation of prisoners based

on its inclusion of photographs of the interior of KCF and maps.  Berry further

noted that defendant Lockhart had indicated that the magazine was being placed on

the Restricted Publications List.  (Dkt. 28, Ex. 12(a)).  Defendant Bowerson, who

had been assigned to hold an administrative hearing on the mail rejection, learned

from officials in Lansing that the magazine issue had been placed on the Restricted

Publications List.  Hearings are not required for the rejection of publications on the

list; therefore, Bowerson completed the hearing report to inform staff and the

prisoner that the magazine was now restricted and will not be allowed in the

facility.  (Dkt. 28, Ex. 12, ¶¶ 4-7, Ex. 12(b); Ex. 13; Ex. 13(a)).

In the view of the undersigned, defendants correctly point out that a

magazine article detailing prison escape plans is a properly restricted material.

*Procunier v. Martinez*, 416 U.S. 396, 412 (1974) (Well-recognized governmental

interest in limiting prisoner speech include "the preservation of internal order and

discipline, the maintenance of internal security against escape or unauthorized

entry and the rehabilitation of the prisoners."); *DiRose v. McClennan*, 26

F.Supp.2d 550 (W.D. N.Y. 1998) (Mail watch on all of inmate's incoming and

outgoing correspondence was justified, for First Amendment purposes, by prison's

concern for security, as inmate had been found to be an escape risk based on letters

23

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

discovered in his cell during a routine search, indicating that inmate had carefully thought out all the details of plan of escape and was willing to urge the use of deadly force to effect his plan.); *Carpenter v. South Dakota*, 536 F.2d 759, 761 (8th Cir. 1976) (A state may restrict a prisoner's right to read certain materials where "the state can show a countervailing interest warranting censorship."); *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (In the prison setting, regulations that restrict a prisoner's access to use and own electronic, educational and entertainment materials are "valid [if they] are reasonably related to legitimate penological interests."); *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2002) (preventing escape and assuring safety of others are legitimate institutional interests.). Thus, defendants are entitled to summary judgment on this claim.

On August 22, 2008, Berry issued a Notice of Package/Mail Rejection on a book entitled, "Codex Magica" as a threat to prison safety and security and prisoner rehabilitation based on its coded material. Again, Bowerson, was assigned to conduct a hearing on the Notice. Bowerson held the hearing on September 25, 2008 and determined that the book violated the prisoner mail policy. He forwarded it to Warden Birkett for his review. The Warden agreed with Bowerson's findings and forwarded the book to the CFA Deputy Director or his designee for review. The Deputy Director's designee, defendant Lockhart, reviewed the book and placed it on the Restricted Publications List because it

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

24

contained information on how to write letters in code.  (Dkt. 28, Ex. 12, ¶¶ 8-10, Ex. 12(c); Ex. 12(d); Ex. 13, ¶ 4, Ex. 13(a); Ex. 13(b)).

Prison inmates are entitled to the protection of the First Amendment, including the free exercise clause.  *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987).  However, an inmate's constitutionally protected rights, including his First Amendment rights, must be balanced against the institution's need to maintain security and order within the prison.  In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court held that prison regulations may infringe on a prisoner's constitutional rights as long as they are rationally related to a legitimate penological concern.  In the context of the First Amendment free exercise clause, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'"  *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), quoting, *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987).  "A religious belief which is not sincerely held or a belief which is purely secular does not require the prison to consider accommodation."  *Mosier v. Maynard, D.O.C.*, 937 F.2d 1521, 1526 (10th Cir. 1991), citing, *Johnson v. Moore*, 926 F.2d 921, 923 (9th Cir. 1991).

The RLUIPA states in pertinent part:

No government shall impose a substantial burden on the

religious exercise of a person residing in or confined to
an institution ... even if the burden results from a rule of
general applicability, unless the government
demonstrates that imposition of the burden on that person
(1) is in furtherance of a compelling governmental
interest; and (2) is the least restrictive means of
furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Thus, a more stringent, less deferential standard is

applied to a RLUIPA claim (the least restrictive means of furthering a compelling

governmental interest) than to a First Amendment § 1983 claim (reasonably related

to legitimate penological interests).  *See Cutter v. Wilkinson*, 544 U.S. 709 (2005).

Under RLUIPA, the initial burden of showing a substantial burden on a religious

practice lies with the plaintiff.  42 U.S.C. § 2000cc-2(b).[5]  The burden then shifts to

the government to demonstrate that the compelling interest test is satisfied.  *See id*.

---

[5] In *Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009), the Sixth Circuit
held that the Eleventh Amendment bars claims for money damages in official
capacity suits against state officials.  Money damages suits against state officials in
their individual capacities, while never specifically address by the Sixth Circuit
(*Heard v. Caruso*, 2009 WL 26298293 (6th Cir. 2009)), is seemingly permissible.
*See e.g. Atkins v. Christiansen*, 2009 WL 4042756 (W.D. Mich. 2009).  However,
District Judge Janet T. Neff recently concluded that the RLUIPA does not permit
claims for money damages against individual defendants.  *Green v. Tudor*, 685
F.Supp.2d 678, 699 (W.D. Mich. 2010).  The Sixth Circuit has at least implicitly
acknowledged that a RLUIPA action can be brought against defendants named in
their individual capacities.  *See Figel v. Overton*, 263 Fed.Appx. 456, 458-459 (6th
Cir. 2008), applying a qualified immunity analysis to a RLUIPA claim.  Qualified
immunity is a defense only available to individual defendants, not to a state or
municipality, or defendants sued in their official capacities.  *Kentucky v. Graham*,
473 U.S. 159 (1985); *Farnsworth v. Baxter*, 2007 WL 2793364, *2 (W.D. Tenn.
2007).

26

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

A governmental practice, decision or regulation imposes a "substantial burden" on the exercise of religion "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004). Stated differently by the Seventh Circuit, "a substantial burden on religious exercise is one that necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise ... effectively impracticable." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from RLUIPA. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 814 (8th Cir. 2008), citing, *Cutter v. Wilkinson*, 544 U.S. 709, 714 (2005). As to plaintiff's Free Exercise and RLUIPA claims, he fails to identify any burden, let alone a substantial one,[6] placed on the exercise of his religion and for that reason, defendants are entitled to summary judgment on these claims.

Turning to plaintiff's due process claim, the Court should conclude that defendants are entitled to summary judgment. The Fourteenth Amendment does not protect against all of the State's deprivations of life, liberty, or property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981). It protects against only those

---

[6] Plaintiff does not claim any need to conduct discovery on this issue. (Dkt. 41).

deprivations of life, liberty, or property that are "without due process of law." *Id.*

Accordingly, the Supreme Court has recognized that the negligent deprivation of

an inmate's property does not violate due process if the state provides an adequate

remedy to redress the wrong. *See id.* at 537, overruled in part, *Daniels v. Williams*,

474 U.S. 327, 328 (1986) (negligence does not amount to a "deprivation" at all,

thus the Due Process Clause is not implicated).  Likewise, "an unauthorized

intentional deprivation of property by a state employee does not constitute a

violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is

available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  In asserting a violation

of procedural due process, a plaintiff must plead and prove that available state

procedures for redressing the wrong are not adequate.  *Vicory v. Walton*, 721 F.2d

1062, 1065-66 (6th Cir. 1983); *Wilson v. Beebe*, 770 F.2d 578, 584 (6th Cir.1985)

(*en banc*).

　　　　While plaintiff complains that the policy directive governing the

administrative hearing process was not precisely followed, plaintiff offers no

evidence that these procedures were inadequate.  Michigan's grievance system

provides state prisoners with an adequate procedure to challenge actions taken by

prison officials. An inmate may file a written grievance; if its resolution is

unsatisfactory to plaintiff, he may then seek sequential evaluation of its disposition

28

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

by supervisory staff, the warden, the MDOC deputy director, the department director, and the ombudsman.  Furthermore, if these five levels prove insufficient, Michigan law allows for judicial review of administrative decision in the state courts.  *DeWalt v. Warden, Marquette Prison*, 112 Mich.App. 313; 315 N.W.2d 584, 585 (1982); Mich. Comp. Laws §§ 791.251 *et seq*.  Finally, a state tort remedy is available.  These remedies have been held to be adequate under federal due process standards.  *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995); *Branham v. Spurgis*, 720 F.Supp. 605, 608 (W.D. Mich. 1989).  Thus, "plaintiff has not shown that no adequate postdeprivation state remedy was available," and therefore he has not alleged a violation of his procedural due process rights so as to enable him to state a § 1983 claim.[7]  *See Barnier v. Szentmiklosi*, 810 F.2d 594, 600 (6th Cir. 1987).  Accordingly, the Court should grant defendants' motion for summary judgment on this claim.

---

[7] Plaintiff does not claim any need to conduct discovery on this issue.  (Dkt. 41).

F.    Eleventh Amendment Immunity

Plaintiff alleges in his complaint that the suit is against defendants in their official and personal capacities.  A suit against a public official in their "official capacity" is a suit against the public entity that employs the public official.  *Grinter v. Knight*, 532 F.3d 567, 572 (6th Cir. 2008), citing, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  In this case, defendants are employed by the State of Michigan so a suit against them in their official capacity is a suit against the State of Michigan.  "The Eleventh Amendment bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court."  *Id.*  The record does not indicate that the State of Michigan has waived its immunity or otherwise consented to being sued and, therefore, the claim cannot be maintained against defendants in their official capacity.  However, the Eleventh Amendment does not bar suit against defendants in their individual capacity under 42 U.S.C. § 1983.

G.    Qualified Immunity

Defendants assert a perfunctory qualified immunity defense.  (Dkt. 28, p. 27).  It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to ... put flesh on its bones."  *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).  Indeed, a court need not make a party's case by scouring the various submissions to piece together appropriate arguments.

30

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
*Murphy v. Lockhart*; Case No. 10-11676

*Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).  And, the court is

not obligated to make defendants' case for them or to "wade through and search

the entire record" for some specific facts that might support their motion.

*InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Simply,

defendants have not satisfied their burden of coming forward with sufficient facts,

or an explanation of applicable law, on which the court could possibly enter

summary judgment in their favor on the basis of qualified immunity.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

plaintiff's motion to strike defendants' affidavits be **DENIED**, that plaintiff's Rule

56(d) motion be **DENIED**, and that defendants' motion for summary judgment be

**GRANTED** in part and **DENIED** in part.  More specifically, the undersigned

**RECOMMENDS** that:

A.   As to defendant Werner, the motion for summary judgment based on

failure to exhaust administrative remedies should be **DENIED**;

B.   As to defendants Bauman and Sherry, the motion for summary

judgment based on failure to exhaust administrative remedies should be

**GRANTED** and the claims **DISMISSED** with prejudice;

C.   As to defendants Birkett, Bearss, and Krajnik, the motion for

summary judgment on the First Amendment retaliation claims should be

**GRANTED**;

D.     As to the mail processing and related constitutional claims, as to all defendants, the motion for summary judgment should be **GRANTED**;

E.     To the extent that plaintiff makes claims against any defendant in their official capacity, such claims should be **DISMISSED**; and

F.     Defendants' motion for summary judgment based on qualified immunity should be **DENIED**.

Finally, to the extent that the Court ultimately permits any of plaintiff's claims to go forward, defendants' motion for protective to preclude discovery until such time as the motion for summary judgment is resolved, should be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc.Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: January 31, 2011                      s/Michael Hluchaniuk
                                            Michael Hluchaniuk
                                            United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on January 31, 2011, I electronically filed the foregoing paper
with the Clerk of the Court using the ECF system, which will send electronic
notification to the following: Allan J. Soros and Julia R. Bell, and I certify that I
have mailed by United States Postal Service the paper to the following non-ECF
participant(s): Timothy Murphy, ID# 183248, BARAGA MAXIMUM
CORRECTIONAL FACILITY, 13924 Wadaga Road, Baraga, MI 49908-9204.

                                            s/Tammy Hallwood
                                            Case Manager
                                            (810) 341-7887
                                            tammy_hallwood@mied.uscourts.gov

33

Report and Recommendation
Motions for Summary Judgment/Strike/Protective Order/ Rule 56(d)
Murphy v. Lockhart; Case No. 10-11676