UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY MURPHY,

                Plaintiff,                      Civil Action No. 10-cv-11676

        v.                             District Judge David M. Lawson
                                     Magistrate Judge Laurie J. Michelson

SEAN LOCKHART, et al.,

                Defendants.
_____/

**REPORT AND RECOMMENDATION DENYING
DEFENDANT WERNER'S SECOND MOTION FOR SUMMARY JUDGMENT[59,68]**

Plaintiff Timothy Murphy ("Plaintiff" or "Murphy"), a Michigan Department of Corrections ("MDOC") prisoner proceeding *pro se*, brought this case pursuant to 42 U.S.C. § 1983 alleging that former or current MDOC employees Sean Lockhart, Thomas Birkett, Ray Bowerson, Michael Krajnik, Sarah Bearss, Kenneth Werner, Cheryl Berry, Catherine Bauman and Jeri Ann Sherry violated a number of his constitutional rights. Presently before the Court for Report and Recommendation is Defendant Werner's Second Motion for Summary Judgment. (Dkt. 59, Def.'s 2d Mot. Summ. J.; Dkt. 14, Order of Ref.)

For the following reasons, this Court RECOMMENDS that Defendant's Motion be DENIED.

## I. BACKGROUND

### A. Facts

Plaintiff is presently an inmate at the Ionia Maximum Correctional Facility (ICF), but when the events underlying this suit took place, he was a prisoner at Kinross Correctional Facility (KCF), Chippewa Correctional Facility (UCF), and Standish Maximum Correctional Facility (SMF).

(Def.'s 2d Mot. Summ. J. at 1; Dkt. 68, Pl.'s Resp. to Def.'s 2d Mot. Summ. J. at 5; Dkt. 44, Pl.'s Resp. To Def.'s Mot. Summ. J. at Ex. 1.)

In March 2007, Plaintiff attempted to execute an elaborate escape plan from Kinross Correctional Facility in Kincheloe, Michigan. (*Id*.) Subsequent to the discovery of this escape attempt, prison officials transferred Plaintiff to Chippewa Correctional Facility, and reclassified Plaintiff to administrative segregation. (Dkt. 44, Pl.'s Resp. to Def.'s Mot. Summ. J. at Ex. 1.)

On May 2, 2007, Plaintiff transferred into the Standish Maximum Correctional Facility. (Dkt. 68, Pl.'s Resp. to Def.'s 2d Mot. Summ. J. at 5.) Shortly thereafter, on May 15, 2007, Defendant Werner completed and signed an Administrative Segregation Behavior Review form for Plaintiff. (Dkt. 44, Pl.'s Resp. to Def.'s Mot. Summ. J. at Ex. 2.) Plaintiff alleges that Defendant Werner improperly inserted a requirement on this form that Plaintiff receive Regional Prison Administrator (RPA) approval before he could be reclassified from administrative segregation. (Dkt. 68, Pl.'s Resp. to Def.'s 2d Mot. Summ. J. at 5.) No such restriction had previously been imposed on Plaintiff. (Dkt. 44, Pl.'s Resp. to Def.'s Mot. Summ. J. at Ex. 2.) This addition of an "RPA Hold" resulted in stricter measures on Plaintiff with regard to possible future release from administrative segregation. (Dkt. 28, Def.'s Mot. Summ. J. at Ex. 3, ¶ HHH.)[1] Essentially, Plaintiff could only be reclassified from administrative segregation upon the approval of the RPA as opposed to other prisoners who only need approval of the Security Classification Committee ("SCC") and

---

[1] Notably Plaintiff and Defendant attach two different versions of MDOC PD 04.05.120 to their filings. MDOC PD 04.05.120 was updated as of September 27, 2010. *See* www.michigan.gov/corrections (last checked July 20, 2011). Prior to that it was updated as of July 21, 2008. Prior to that is was updated as of March 26, 2006. The conduct at issue here occurred on May 15, 2007. Therefore, the March 26, 2006 policy is the relevant policy. This is the policy attached to Defendant's First Motion for Summary Judgment as Exhibit 3. (Dkt. 28, Def.'s Mot. Summ. J. at Ex. 3.)

the Warden:

> A prisoner shall be reclassified from administrative segregation only
> with the approval of SCC and the concurrence of the Warden or
> designee; however, a prisoner confined to administrative segregation
> as a result of an assault on staff resulting in serious physical injury on
> staff may be reclassified only with written approval of the Warden
> and the appropriate RPA. The [Correctional Facilities
> Administration] Deputy Director also may require written approval
> of both the Warden and RPA to reclassify a prisoner who poses a
> unique concern. Wardens shall use a Request for RPA Approval to
> Reclassify from Administrative Segregation (CSJ-283b) to obtain
> approval in such cases. If the RPA does not approve the Warden's
> request, the RPA shall personally interview the prisoner within six
> months after denial of request.

(*Id.*)

In other words, a prisoner confined to administrative segregation without an RPA hold can

be reclassified upon the approval of the SCC, which reviews each prisoner "at intervals of no more

than seven calendar days during the first two months of segregation and at intervals of no more than

30 days thereafter." (*Id.* at ¶ EEE.) Whereas, a prisoner confined to administrative segregation with

an RPA Hold can only be reclassified "with written approval of the Warden and the appropriate

RPA." (*Id.* at ¶ HHH.) Although both the CSS and the Warden review prisoners on a monthly

basis, if the RPA does not approve a Warden's request for reclassification, the RPA is only obligated

to personally interview the prisoner within six months. (*Id.*)

Defendant Werner claims that "[i]f [he] accidentally omitted Murphy's RPA Hold initially,

[he] simply corrected [his] mistake to accurately reflect [Plaintiff's] unique safety concern." (Def.'s

2d Mot. Summ. J. at Ex. A.)

Plaintiff filed Grievance SMF 08-01-0095-22A on January 9, 2008 complaining that the RPA

Hold was "an improper application of Policy Directive 04-05-120(HHH)." (Dkt. 44, Pl.'s Resp. to

Def.'s 2d Mot. Summ. J. at Ex. 4.) Specifically, Plaintiff claimed that Defendant Werner placed the

3

RPA Hold on him in retaliation for his "previous litigation efforts against SMF Staff Member Mark

Machulis." (*Id*. at ECF 23.) Plaintiff pursued Grievance SMF 08-01-0095-22A through Step III.

(*Id*. at Ex. 5.) None of the responses addressed the substance of the Grievance.

### B. Procedural History

Plaintiff brought this prisoner civil rights case *pro se* and *in forma pauperis* on April 24,

2010. (Dkt. 1, Pl.'s Compl. at 1.) Defendant Werner filed an initial Motion for Summary Judgment

along with co-defendants Bauman, Bearss, Birkett, Bowerson, Krajnik, Lockhart and Sherry on

August 4, 2010. (Dkt. 28, Defs.' Mot. Summ. J.) Magistrate Judge Hluchaniuk issued a Report and

Recommendation on that Motion on January 1, 2011. (Dkt. 54.) He recommended denial of

Werner's initial Motion for Summary Judgment because "defendant has not satisfied his burden of

establishing that plaintiff failed to exhaust his administrative remedies." (*Id*.) Defendant Werner

filed a Second Motion for Summary Judgment on February 22, 2011. (Def.'s 2d Mot. Summ. J.)[2]

## II. ANALYSIS

### A. Legal Standards

#### 1. Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A

fact is material only if it might affect the outcome of the case under the governing law. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment,

the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the

---

[2] It is unclear to this Court whether Defendant received leave to file a second motion for summary judgment pursuant to E.D. Mich. LR 7.1(b)(2).

4

light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587.  The Court must determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to a jury or whether the moving party must prevail as a matter of law.  *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Notably, supporting or opposing affidavits must "set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(e).  However, as this district has pointed out, "[t]he submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial." *Muhammad v. Close*, No. 98-10153, 2011 U.S. Dist. LEXIS 73700 at *11-12 (E.D. Mich. Jul. 8, 2011) (citations omitted); *see also DeBiasi v. Charter County of Wayne*, 537 F. Supp. 2d 903, 911-12 (E.D. Mich. 2008).   "Rather, 'the party opposing summary judgment must show that [he] can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a material fact exists, and that a trial is necessary.'"  *Muhammad*, 2011 U.S. Dist. LEXIS 73700 at *11-12.

5

2. *First Amendment Retaliation*

Defendant Werner contends that his inclusion of an RPA Hold on Plaintiff's Administrative

Segregation Behavior Form did not violate Plaintiff's First Amendment rights as a matter of law.

A First Amendment retaliation claim essentially consists of three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action
> was taken against the plaintiff that would deter a person of ordinary
> firmness from continuing to engage in that conduct; and (3) there is
> a causal connection between elements one and two—that is, the
> adverse action was motivated at least in part by the plaintiff's
> protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).

Both parties agree that filing litigation is protected conduct under the First Amendment.

(Def.'s 2d Mot. Summ. J. at 2; Pl.'s Resp. to Def.'s 2d Mot. Summ. J. at 6.)  Indeed, "[a] prisoner's

right to file lawsuits and access the courts is a well-established and long-standing constitutional

right."  *See Muhammad*, 2011 U.S. LEXIS 73700 at *22 (citation omitted).  Thus, the Court will

focus on  the remaining two elements.

**B.  Summary Judgment is Not Warranted on the Adverse Action Element of Plaintiff's First Amendment Retaliation Claim**

The parties disagree as to whether the placement of an RPA Hold is an adverse action under

*Thaddeus-X*.

In *Bell v. Johnson*, the Sixth Circuit addressed how courts should analyze the adverse action

element.  The Court first noted that in *Thaddeus-X* it stated, "'government actions, which standing

alone do not violate the Constitution, may nonetheless be constitutional torts if motived in

substantial part by a desire to punish an individual for exercise of a constitutional right.'"  *Bell*, 308

6

F.3d 594, 603 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 386.)  However, some actions are "'so de minimis that they do not give rise to constitutionally cognizable injuries.'"  *Id.*  Therefore, the Sixth Circuit only deems actions to be "adverse" if they "'deter a person of ordinary firmness from the exercise of the right at stake.'"  *Id.*  The Court went on to state that "[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact:"

> Our discussion of the 'adverse action' requirement in *Thaddeus-X* makes it clear that, in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law.

*Id.* (citing *Thaddeus-X*, 175 F.3d at 386) .

In *Bey v. Luoma*, No. 07-60, 2008 U.S. Dist. LEXIS 113694 (W.D. Mich. Aug. 29, 2008), the plaintiff brought a First Amendment retaliation claim against various MDOC defendants.  *Id.* at *16-17.  The plaintiff claimed that his "continued confinement" in administrative segregation via an RPA Hold was "the result of his protected conduct in filing grievances and lawsuits."  *Id.* at *17. The Court addressed whether a three-year confinement in administrative segregation constituted a violation of Plaintiff's due process rights.  *Id.* at *11-17.  In that context, the Court noted that in some circumstances a lengthy confinement to administrative segregation can constitute an "atypical or significant hardship."  *Id.* at *15.  From this analysis, the Court went on to implicitly find such confinement could also constitute a First Amendment adverse action "that would deter a person of ordinary firmness from engaging" in protected conduct.[3]  *Id.* at *15-18.

---

[3]Notably, however, the Court also found that plaintiff failed to create a genuine issue of material fact as to causation.  *Id.*  Specifically, the plaintiff offered no evidence to refute the defendant's admissible affidavits, incident reports and misconduct summaries establishing that the defendant's actions were motivated by non-retaliatory reasons.  *Id.*

Considering *Bell v. Johnson* and *Bey v. Luoma*, and taking the relevant facts in the light most favorable to Plaintiff, this Court finds that a genuine issue of material fact exists on the adverse action element. It is undisputed that Defendant Werner put an RPA Hold on Plaintiff. (Def.'s 2d Mot. Summ. J. at Ex. A.) Not all inmates placed in administrative segregation are subject to an RPA Hold. (Dkt. 28, Def.'s Mot. Summ. J. at Ex. 3, ¶ HHH.) The record reveals at least two significant adverse affects of an RPA Hold: 1) The RPA prisoner can only be reclassified upon the approval of the RPA as opposed to a non-RPA prisoner that can be reclassified upon the approval of the CSS; and 2) the RPA does not have to interview the prisoner within one month of denying approval for reclassification; he or she has six months. (Dkt. 28, Def.'s Mot. Summ. J. at Ex. 3, ¶ HHH; Dkt. 68, Pl.'s Resp. to Def.'s 2d Mos. Summ. J. at Ex. 3.) Plaintiff argues that this difference usually results in prisoners with RPA holds staying in administrative segregation longer. (Dkt. 68, Pl.'s Resp. to Def.'s 2d Mot. Summ. J. at 7.) Indeed, it is a serious enough action that it cannot be imposed by any prison official. (Dkt. 28, Def.'s Mot. Summ. J. at Ex. 3, ¶ HHH.) As discussed below, there is a proper procedure for the proper officials to impose this hold. (*Id.*) This Court believes a jury could reasonably find that imposing such a hold could "deter a person of ordinary firmness from engaging" in protected conduct, and thus, summary judgment is not warranted. *See Bey v. Luoma*, 2008 U.S. Dist. LEXIS 113694 at *15-18; *Bell*, 308 F.3d 594, 603 (6th Cir. 2002).

### C. Summary Judgment is Not Warranted On the Causal Element of Plaintiff's First Amendment Retaliation Claim

Plaintiff has also raised a genuine issue of material fact as to the causal element of his retaliation claim. Defendant argues that Plaintiff's claim fails on this element because the protected action – a lawsuit filed against Defendant's fellow SMF Staff Member Mark Machulis in 1989 – occurred 17 years prior to the alleged adverse action (i.e., the imposition of the RPA Hold). (Def.'s

8

2d Mot. Summ. J. at 4.)   However, this is an overly simplistic view of the causal element of

retaliation claims.   *See Mosholder v. Barnhardt*, No. 09-11829, 2010 U.S. Dist. LEXIS 12386 (E.D.

Mich. Feb. 12, 2010).   As a Court in this district has previously stated, "[a] causal connection exists

between the adverse action and the protected speech if the speech was 'a substantial or motivating

factor' in the adverse action."   *Id*. (citing *Hughes v. Region VII Area Agency on Aging*, 542 F.3d

169, 180 (6th Cir. 2008)).

The Sixth Circuit has extensively analyzed the role of temporal proximity in establishing a

causal connection in retaliation claims.   *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523-26

(6th Cir. 2008).   Indeed, in *Mickey*, the Sixth Circuit seemed to reconcile "two seemingly divergent

lines of cases" into one cohesive rule.   *Mosholder*, 2010 U.S. Dist. LEXIS 12386 at *32.   The Court

held that where an adverse action "occurs very close in time" after protected activity, "such temporal

proximity between the events is enough to constitute evidence of a causal connection for the

purposes of satisfying a prima facie case of retaliation."   *Mickey*, 516 F.3d at 525.   However, "where

some time lapses" between the events, the Plaintiff must "couple temporal proximity with other

evidence of retaliatory conduct to establish causality."   *Id*. (citations omitted).   This is not

inconsistent with the District Court's discussion in *Muhammed* :

> This Court also discussed the unsettled nature of the law in this
> Circuit on the issue of temporal proximity, noting that some cases
> have found that proof of a short time between the protected activity
> and the retaliatory act to be sufficient circumstantial evidence of
> causation if the adverse event was "acutely near in time," while
> others have determined that temporal proximity is insufficient to
> establish causation without "other compelling evidence."

*Muhammad*, No. 98-10153, 2011 U.S. Dist. LEXIS 73700 at *7-8**.**

Clearly here more than "some time" elapsed between the protected activity and alleged

9

adverse action.  But there does not appear to be a  bright line rule, as Defendant suggests, that a 17-year gap in time defeats a retaliation claim as a matter of law.  In fact, in *Dixon v. Gonzalez*, 481 F.3d 324, 334 (6th Cir. 2007), the Sixth Circuit stated that a lapse in time of ten years between the protected activity and the adverse action does not inevitably foreclose a finding of causality.  Indeed, "'[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of [a] plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn.'"*Id.* at 335  (quoting *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 895 (9th Cir. 2005)).  This is especially true if there is a "period of absence" from the defendant between the prisoner's protected conduct and the adverse action, within which the defendant did not have an opportunity to retaliate.  *Muhammad v. Close*, 08-1944, 2009 U.S. App. LEXIS 29556 at *6 (6th Cir. April 20, 2009); *Dixon*, 481 F.3d at 334.

This case involves such an absence.  While the record is very sparse as to Plaintiff's specific dates of incarceration at various MDOC facilities, it appears  he was in SMF from some point in 1999 through some point in 2001.  (Dkt. 1, Pl.'s Compl. at Ex. B.) In 2001, Plaintiff was transferred to Bellamy Creek Correctional Facility for some unknown amount of time.  (*Id.*)   Plaintiff was at Kinross Correctional Facility in 2005.  (*Id.*) Plaintiff's attempted escape from Kinross was in March 2007.  (*Id.*)  He was then transferred  to Chippewa Correctional Facility (UCF), and reclassified to administrative segregation.  (Dkt. 44 at Ex. 1.) Plaintiff transferred back to SMF on May 2, 2007 – the facility where Defendant Werner worked.  It was shortly thereafter, on May 15, 2007, that Werner completed and signed the Form for Plaintiff indicating Plaintiff had an RPA Hold.  (Dkt. 44, Pl.'s Resp. to Mot. Summ. J. at Ex. 2.)

Thus, with regard to temporal proximity evidence of causation, Defendant is correct that

Plaintiff's protected behavior (his 1989 lawsuit against SMF Staff Member Mark Machulis) occurred approximately17 years prior to the adverse action.  It is unclear, however, whether Machulis and/or Defendant Werner had an opportunity to retaliate prior to Plaintiff's transfer back to SMF on May 2, 2007.  As such, this Court must analyze the specific evidence of retaliatory conduct identified  by Plaintiff.  *Mickey, supra.*

   MDOC Policy Directive 04.05.120 sets forth the procedures that govern administrative segregation.  (Dkt. 28, Def.'s Mot. Summ. J. at 3.)  The Policy Directive provides that a prisoner may be classified to administrative segregation if he is "a serious escape risk."  (*Id.* ¶ H.)  With regard to release from administrative segregation, it also provides that "[t]he [Correctional Facilities Administration] Deputy Director may require written approval of the Warden, RPA, and/or the Deputy Director to reclassify a prisoner who poses a unique concern."  (*Id.* ¶ HHH.) If this is not required, the prisoner can be reclassified without such approval.  (*Id.*)

### 1. Defendant Werner's Affidavit

   Paragraph eleven of Defendant Werner's affidavit gives rise to an inference of causation. Defendant Werner avers that, "[i]f [he] accidentally omitted Murphy's RPA Hold initially, [he] simply corrected [his] mistake to accurately reflect [Plaintiff's] unique safety concern."  (Dkt. 59, Def.'s 2d Mot. Summ. J. at Ex. A.)

   It is clear from the record that there was not an RPA Hold on Plaintiff prior to March 15, 2007.  (Dkt. 44, Pl.'s Resp. to Def. Mot. Summ. J. at Ex. 1.)  Shortly after Plaintiff's attempted escape, Prison officials classified Plaintiff to administrative segregation on March 29, 2007.  (*Id.*) There is no indication, however, that any prison official put an RPA Hold on Plaintiff at that time. (*Id.*) Plaintiff received an Administrative Segregation Behavior Review on April 5, 2007. (*Id.*) The

11

accompanying form signed by Assistant Deputy Warden T. Mackie at URF does not have an RPA Hold. (*Id.*) Likewise, the Security Reclassification Notice signed by Deputy Warden J. Boyton at URF on April 12, 2007 does not have an RPA Hold. (*Id.*) In addition, the Request for Adminsitrative Segregation Continuance signed by Warden Jeri-Ann Sherry at URF does not have an RPA Hold. (*Id.*) Lastly, the Administrative Segregation Behavior Review form signed by Assistant Deputy Warden Mackie on May 2, 2007 does not have an RPA Hold. (*Id.*) It is not until the Administrative Segregation Behavior Review form signed by Defendant Werner, an Assistant Resident Unit Supervisor (ARUS), on May 15, 2007, that Plaintiff had an RPA Hold. It is perplexing, therefore, that Defendant Werner says he "accidentally omitted" the RPA Hold. There was nothing for him to "accidentally omit." (*Id.*)

Defendant's contention that he simply "corrected [his] mistake" by adding the RPA Hold is also confusing. In paragraph eleven of his affidavit, Defendant Werner acknowledges that "[a]n ARUS alone does not decide which prisoners have holds." (Dkt. 59, Def.'s 2d Mot. Summ. J. at Ex. A.) This is true. (Dkt. 1, Pl.'s Compl. at Ex. A.) MDOC Policy Directive 04.05.120 states that "[t]he CFA Deputy Director [] may require written approval of the Warden, RPA, and/or the Deputy Director to reclassify a prisoner who poses a unique concern." (*Id.* ¶ MMM.) Far from establishing a lack of causation as a matter of law, Defendant Werner's contention that he added the RPA Hold to correct a mistake he had no authority to correct is suggestive of motive and causation.

This reading is further supported by the fact that, on November 26, 2008, Defendant Bauman, a Correctional Facilities Administration Deputy Director at the time, e-mailed Defendant Sherry, an RPA at the time, to initiate putting an RPA Hold on Plaintiff via the proper procedures. (Dkt. 44. Pl.'s Resp. to Def.'s Mot. Summ. J. at Ex. 2.) In her e-mail, she stated:

> PD 04.05.120 Segregation Standards, page 12 of 13, MMM; states that the CFA Deputy Director also may require written approval of the Warden, RPA, and/or the Deputy director to reclassify a prisoner who poses a unique concern.
>
> I would like to request a RPA Hold be placed [on Plaintiff] due to the seriousness of [his] offense.

(*Id.*)[4] Viewing this in a light most favorable to the Plaintiff, it suggests that Defendant Werner acted outside the scope of his authority.

In sum, the record establishes that : 1) There was not an RPA Hold on Plaintiff prior to May 15, 2007; 2) Defendant Werner placed an RPA Hold on Plaintiff on May 15, 2007; and 3) Defendant Werner did not have the authority to place an RPA Hold on Plaintiff on May 15, 2007. The parties' explanations for why Werner did this support an inference that the RPA Hold could have been imposed with retaliatory motive.

### 2. The Parties' Explanations

Plaintiff's explanation is first provided in his Complaint:

> On February 22, 2008, Plaintiff personally confronted defendant Werner about the change to his May 14, 2007 Segregation Behavior Review form, which imposed the RPA requirement. Defendant Werner stated, "Machulis told me all about you. I've made my

---

[4] Defendant could have argued that this subsequent e-mail illustrates that the RPA Hold would have been instituted in the absence of Plaintiff's protected activity. *Smith v. Campbell*, 250 F.3d 1032, 1038 (6th Cir. 2001.) Defendant did not argue this, however. In addition, Defendant has not proffered sufficient evidence upon which this Court can conclude as a matter of law that Defendant Werner's actions did not influence the subsequent RPA Hold. In other words, if Defendant Bauman's RPA Hold is simply a rubber-stamp of Defendant Werner's procedurally inadequate RPA Hold, and Defendant Werner's RPA Hold was the result of retaliatory motive, Defendant Werner has not proven that the action would have occurred absent the retaliatory motive. *Scott v. Burress*, No. 06-13916, 2008 U.S. Dist. LEXIS 15947 at *32-33 (E.D. Mich. March 3, 2008).

decision; you need RPA approval.  If you don't like it, sue me."[5]

(Dkt. 1, Pl.'s Compl. at ¶ 50.)  Plaintiff has submitted several prisoner affidavits that likewise suggest the 1989 lawsuit against Machulis had not faded from memory at SMF in 2007.  Plaintiff submitted the affidavits of:  Lionel Hines, Leonard Turner, and Antoine Campbell.[6]  (Pl.'s Resp. To Def.'s 2d Mot. Summ. J. at Exs. D, E, F.)

Prisoner Hines' affidavit states: "On November 28, 2007, I overheard SMF Quartermaster Worker Machulis talking to Prisoner Murphy #183248 in Cell 125 telling him he got in trouble because of Murphy and that he would get back at him."  (Pl.'s Resp. to Def.'s 2d Mot. Summ. J. At Ex. D.)

Prisoner Turner's affidavit states:

> On November 28, 2007, I visually observed SMF Quartermaster Staff Member Mark Machulis approach the cell of Prisoner Murphy #183248 in Unit-1, Cell 125, and begin to taunt him.  I heard Staff Member Machulis say, "You got me in trouble with my boss, Wendel

---

[5]  Defendant Werner denies making this statement.  (Dkt. 68. Def.'s 2d Mot. Summ. J. at Ex. A, ¶ 12).

[6]  As stated above, supporting or opposing affidavits must "set out facts that would be admissible in evidence."  Fed. R. Civ. P. 56(e).  However, it is the testimony that must be admissible as opposed to the form of the testimony at the summary judgment stage. *Muhammad v. Close*, No. 98-10153, 2011 U.S. Dist. LEXIS 73700 at *11-12 (E.D. Mich., Jul. 8, 2011) (citations omitted); *see also DeBiasi v. Charter County of Wayne*, 537 F. Supp. 2d 903, 911-12 (E.D. Mich., 2008).  In other words, even if an affidavit contains inadmissable hearsay at the summary judgment stage, if the hearsay declarant can be called at trial to testify, the hearsay in the affidavit may be considered on summary judgment.  *Id*.  Defendants have not objected to these affidavits.  Moreover, Defendants have not indicated that the hearsay declarants would be unavailable at trial or would deny making these statements.  *cf. Debiasi*, 537 F. Supp. 2d at 913 (Defendant illustrated through deposition testimony that even if the hearsay declarant were called at trial, he would deny making the out-of-court statement).  Moreover, Plaintiff does not argue that the affidavits prove Defendant Werner acted with retaliatory motive, but, rather, that the previous lawsuit, although filed in 1989, was still a topic of conversation at SMF.  (Pl.'s Resp. to Def.'s 2d Mot. Summ. J. at 12.)  Thus, the statements will be considered on summary judgment.

Rodgers, when you sued us for me putting you in Jail.  Pay back is a
bitch huh."

(Pl.'s Resp. to Def.'s 2d Mot. Summ. J. At Ex. E.)

Prisoner Campbell's affidavit states:

On May 1, 2008, SMF Property Staff Person McIntire delivered to
me, in my cell, HU-1, 144, my personal television.  As Mr. McIntire
was leaving, Prisoner Murphy called Mr. McIntire to his cell door.
I then heard McIntire say, "Murphy, you got nothing coming.  You
like to file grievances and lawsuits.  Well, I got news for you; it
didn't work with Machulis, and it won't work this time.  You'll learn
your lesson one day."

(Pl.'s Resp. to Def.'s 2d Mot. Summ. J. At Ex. F.)

Plaintiff contends  these affidavits, in conjunction with his Complaint, show that "from the

date of his arrival at SMF through at least July 2008, Machulis had been telling other SMF staff

members about the details of his prior encounters with Plaintiff, centering around his litigation

efforts, and how he got in trouble with his MDOC superiors as a result of Plaintiff's litigation

efforts."  (Pl.'s Resp. to Def.'s 2d Mot. Summ. J. at 12.)  He also relies on the questionable manner

in which Werner imposed the RPA Hold to claim that a retaliatory motive on the part of Werner may

be reasonably inferred. (*Id.*)  In response, Werner simply avers that he did not place the RPA Hold

on Plaintiff in retaliation for the long-ago lawsuit against another MDOC official.  (Dkt. 59, Def.'s

2d Mot. Summ. J. at Ex. A, ¶ 13.)  Given that his explanation for placing the hold – i.e., that he was

correcting a mistake – is contradicted by other evidence in the record, the Court finds there is a

genuine issue of material fact on the causation element that precludes the granting of Defendant's

Motion for Summary Judgment.[7]

---

[7] For the reasons stated, Defendant's qualified immunity argument for summary judgment
also fails.  The Court would also like to reiterate the statement by Magistrate Judge Hluchanik in his

15

## III.  RECOMMENDATION

For the foregoing reasons, this Court RECOMMENDS that Defendant's Motion be DENIED.

## IV.  FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005).  The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97.  A copy of any objections is to be served upon this magistrate judge. E.D. Mich. LR 72.1(d)(2).  Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service

―――――――――――――

Report and Recommendation on Defendants' First Motion for Summary Judgment:

> It is not sufficient for a party to mention a possible argument "in a most skeletal way, leaving the court to . . . put flesh on its bones." Indeed, a court need not make a party's case by scouring the various submissions to piece together appropriate arguments.  And, the Court is not obligated to make defendants' case for them or to "wade through and search the entire record" for some specific facts that might support their motion.  Simply, defendants have not satisfied their burden of coming forward with sufficient facts, or an explanation of applicable law, on which the court could possibly enter summary judgment in their favor on the basis of qualified immunity.

(Dkt. 55 (citations omitted).)

16

of the response.  E.D. Mich. LR 72.1(d)(3), (4).


S/Laurie J. Michelson
Laurie J. Michelson
United States Magistrate Judge


Dated: July 29, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on July 29, 2011.

s/J. Johnson
Case Manager to
Magistrate Judge Laurie J. Michelson