UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY MURPHY,

        Plaintiff,

v.

        Case Number 10-11676
        Honorable David M. Lawson
        Magistrate Judge Michael J. Hluchaniuk
SEAN LOCKHART, CFA Administrative        Magistrate Judge Laurie J. Michelson
Assistant, THOMAS BIRKETT, SMF Warden
RAY BOWERSON, Resident Unit Manager,
MICHAEL KRAJNIK, Resident Unit Manager,
SARAH BEARSS, Assistant Resident Unit
Supervisor, KENNETH WERNER, Assistant
Resident Unit Supervisor, CHERYL BERRY,
General Office Assistant/Mailroom Clerk,
CATHERINE S. BAUMAN, LMF Warden,
and JERI-ANN SHERRY, Regional Prison
Administrator,

        Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART AND REJECTING IN PART
MAGISTRATE JUDGE'S HLUCHANIUK'S REPORT AND RECOMMENDATION,
ADOPTING MAGISTRATE JUDGE'S MICHELSON'S REPORT AND
RECOMMENDATION, OVERRULING DEFENDANTS' OBJECTIONS
TO REPORT AND RECOMMENDATION, OVERRULING IN PART PLAINTIFF'S
OBJECTIONS, GRANTING IN PART AND DENYING IN PART DEFENDANTS'
FIRST MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT
WERNER'S SECOND MOTION FOR SUMMARY JUDGMENT,
AND CONTINUING ORDER OF REFERENCE**

The matter is before the Court on the objections by some of the defendants to a report filed

by Magistrate Judge Michael J. Hluchaniuk on January 31, 2011 recommending that the defendants'

first motion for summary judgment be granted in part and denied in part. In addition, Magistrate

Judge Laurie J. Michelson filed a report on July 29, 2011 recommending that defendant Kenneth

Werner's second motion for summary judgment be denied. Defendant Werner filed objections to

that report. The Court entered a general order of reference to conduct all pretrial matters, after

which the defendants filed their motions.  After Judge Hluchaniuk filed his report, the case was reassigned to Magistrate Judge Michelson for docket efficiency.  The defendants filed timely objections to Judge Hluchaniuk's report, followed four days later with corrected objections.  The plaintiff also filed timely objections.  Defendant Werner filed timely objections to Judge Michelson's report.  The matter is before the Court for a *de novo* review.

I.

The plaintiff, a prisoner currently incarcerated at the Ionia Maximum Correctional Facility in Ionia, Michigan, filed the present action on April 26, 2010 seeking relief from violations of his rights secured by the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 under 42 U.S.C. § 1983 and the Michigan Constitution.  The plaintiff alleges that the defendants retaliated against him in various ways for comments he made to a reporter and that appeared in an *Esquire Magazine* article discussing an elaborate escape the petitioner attempted from the Kinross Correctional Facility ("KCF") in Kincheloe, Michigan.  He also alleges that prison personnel at the Standish Correctional Facility refused to deliver certain mail to him, which he contends contains religious material.  The plaintiff alleges that defendant Werner retaliated against him for a lawsuit the plaintiff filed several years ago against Werner's co-prison worker.  Finally, the plaintiff alleges that his continued confinement in administrative segregation without meaningful review violates his right to due process.

The following facts, viewed in the light most favorable to the plaintiff as non-moving party, are revealed by the record.  In March 2007, the plaintiff's plan to escape from KCF was foiled when prison officials discovered the tunnel he and his cellmates had managed to dig from their cell to the

-2-

outer perimeter of KCF. On April 11, 2007, the plaintiff was found guilty of escape in a Michigan Department of Corrections (MDOC) formal major misconduct hearing and subsequently classified to administrative segregation status pursuant to MDOC Policy Directive (PD) 04.05.120(L)(3). The administrative segregation status did not include a provision that a classification change could be made only with the consent of the Regional Prison Administrator (RPA). In some cases, such permission is required, in which case the prisoner is considered to be under a "RPA hold" under PD 04.05.120(MMM). On May 2, 2007, Murphy was transferred to the Standish Maximum Correctional Facility (SMF) in Standish, Michigan, where five defendants were employed — defendants Thomas Birkett as warden; Kenneth Werner and Sarah Bearss as assistant resident unit supervisors; and Ray Bowerson and Michael Krajnik as resident unit managers.

On May 14, 2007, defendant Werner, while completing the segregation behavior review form required by SMF Operating Procedure 04.05.120B, altered Murphy's security classification to include an RPA hold. Under the hold, only the RPA could reclassify Murphy to the general prison population, whereas before, the Security Classification Committee (SCC) could reclassify Murphy as long as the warden concurred. When Murphy confronted defendant Werner about the change on February 22, 2008, defendant Werner stated, "[Another prison guard] told me all about you. I've made my decision; you need RPA approval. If you don't like it, sue me." Compl. ¶ 50.

On October 18, 2007, reporter Brian Mockenhaupt contacted Murphy concerning his desire to write an article about Murphy's failed escape from KCF for *Esquire Magazine*. Mockenhaupt had obtained permission from prison officials to interview Murphy. Murphy and Mockenhaupt communicated through letters and visits from October 2007 through May 2008. *Esquire Magazine* published Mockenhaupt's article in its August 2008 issue. The article, which quotes Murphy at

length, discussed the security flaws at KCF, detailing the escape plan and revealing which prison staff Murphy manipulated and how he obtained and built the necessary tools to dig the tunnel. Needless to say, it did not portray the defendants in the most flattering light.

In May 2008, Murphy was assigned to work as a porter, for which he was paid approximately $65 per week. Murphy's copy of the August 2008 issue of *Esquire Magazine* arrived at SMF in the middle of July. On July 24, 2008, the prison issued a notice of package/mail rejection that stated the magazine violated PD 05.03.118(HH). The magazine was sent to Bearss's office, where Murphy witnessed defendants Birkett, Bearss, and Krajnik read the article. On July 29, 2008, Murphy was called into Bearss's office, where he was confronted by Birkett, Bearss, and Krajnik about his participation in the article. The three defendants apparently were upset: defendant Birkett informed Murphy that he "[would] remain in Ad-Seg for a long, long time because of it," and Bearss suggested to Birkett that Murphy be fired from his work assignment. Compl. ¶¶ 59, 62. Murphy was terminated from his work assignment the following day. When confronted about the termination, Bearss told Murhpy, "You should have thought about it before you did that article." Compl. ¶ 64.

On August 22, 2008, defendant Bowerson held an administrative hearing on the prison's decision to reject Murphy's copy of *Esquire*. Murphy alleges that he was not offered an opportunity to be present at the hearing, to review the publication, or to provide a statement to be considered at the hearing. Bowerson affirmed the rejection of the August 2008 issue of *Esquire*. On August 22, 2008, defendant Berry issued a notice of package/mail rejection to prevent a copy of the book *Codex Magica: Secret Signs, Mysterious Symbols, and Hidden Codes of the Illuminati* because it violated PD 05.03.118(HH). The plaintiff claims this is a religious book that he ordered from the Power of

Prophecy Ministries.  Defendant Bowerson upheld the rejection of *Codex Magica* in an administrative hearing held on September 25, 2008.  On November 5, 2008, defendant Birkett asked defendant Lockhart to place *Codex Magica* on the Restricted Publications List.  Lockhart upheld censorship of the book in a November 24, 2008 administrative hearing.

On November 26, 2008, defendant Catherine Bauman, warden of the Alger Correctional Facility, emailed Jerri-Ann Sherry, MDOC RPA, and requested approval to place an RPA hold on Murphy and the other three attempted escapees mentioned in the *Esquire* article.  During an interview with Sherry on January 21, 2009, the plaintiff asked her how long he would have to remain in administrative segregation, and she responded, "I don't make deals.  All I can tell you is that it's too soon.  You didn't do yourself any favor with that magazine story."  Compl. ¶ 55.

Murphy was transferred to Baraga Maximum Correctional Facility (AMF) on June 30, 2009, where he remained in administrative segregation.  Subsequently, he was transferred to the Ionia Maximum Correctional Facility.

Murphy filed grievances concerning the RPA hold, rejection of mail, and loss of his prison job.  Some were rejected on procedural grounds for being late, as noted by Judge Hluchaniuk.

The plaintiff filed his complaint in this case on April 26, 2010.  The plaintiff brings a number of claims against the defendants.  First, the plaintiff alleges a violation of his due process rights.  To that effect, he alleges that MDOC policy 04.05.120 relating to administrative segregation is unconstitutional as applied because he has been subjected to the harsh conditions of segregation — which, the plaintiff asserts, have caused him to suffer severe depression, suicidal thoughts, extreme back pain, arthritis, stress, and cognitive impairment — for the last three years without any substantive review.  Second, he brings a claim for First Amendment retaliation, alleging that

defendants Bauman and Sherry changed his security classification to include an RPA hold in response to his communication with the media. He brings an identical claim against defendant Werner, alleging that defendant Werner changed the plaintiff's security classification to include an RPA hold to punish him for filing a grievance/lawsuit against prison guard Machulis, a fellow SMF worker. Third, the plaintiff brings a claim for First Amendment retaliation against defendants Birkett, Bearss, and Krajnik for terminating his employment as porter and laundry worker in the administrative segregation housing unit. Fourth, he contends that defendants Lockhart's, Birkett's, Bowerson's, Berry's, and Sherry's role in rejecting two pieces of his mail — a copy of the *Esquire* magazine which features the article on his attempted escape and a copy of the religious book, *Codex Magica* — violated his rights to due process, free exercise of religion, free speech, and his rights under the RLUIPA, although in his objections to the Judge Hluchaniuk's Report and Recommendation, the plaintiff concedes that his claims with respect to the *Esquire* magazine should be dismissed.

On August 5, 2010, all defendants except Cheryl Berry filed a motion for summary judgment. In their motion they argue that (1) defendants Werner, Bauman, and Sherry are entitled to summary judgment based on the plaintiff's failure to exhaust administrative remedies; (2) defendants Birkett, Bearss, and Krajnik are entitled to summary judgment on the plaintiff's First Amendment retaliation claim on the grounds that they would have taken the same actions to remove the plaintiff from his prison job regardless of the plaintiff's exercise of a protected activity; (3) defendants Birkett, Lockhart, and Bowerson are entitled to summary judgment on the plaintiff's First Amendment claim because the restrictions placed on the plaintiff were reasonably related to legitimate penological interests; (4) the plaintiff's official capacity claims are barred by the Eleventh

-6-

Amendment; and (5) as an apparent afterthought, the plaintiff's individual capacity claims are barred by qualified immunity insofar as he has failed to demonstrate a violation of clearly established rights. Notably, the defendants did not move for summary judgement with respect to the plaintiff's claim that his continued RPA-hold classification without substantive review violates his right to due process.

On August 5, 2010, the same defendants filed a motion for protective order pursuant to Federal Rule of Civil Procedure 26, arguing that the prisoner's discovery requests seek the production of documents related to claims that were not properly exhausted through the prison grievance process, as well as claims barred by immunity, and that discovery requested is therefore unduly burdensome and inconsistent with the Prison Litigation Reform Act's goal of the early dismissal of non-cognizable claims.

The next day, the magistrate judge entered orders requiring the plaintiff to respond to the motion for protective order and motion for summary judgment. On September 9, 2010, the plaintiff filed a motion to strike affidavits offered in support of the defendants' motion for summary judgment, arguing that the affidavits violate Federal Rule of Civil Procedure 56(e) [now Rule 56(c)(4)] because they are not based on personal knowledge or set forth facts that would be inadmissible in evidence. The plaintiff then filed a motion for relief pursuant to Rule 56(f) [now Rule 56(d)] requesting the Court to delay ruling on the defendants' motion for summary judgment until he has had the opportunity to pursue limited discovery. He then filed a response to the defendants' motion for summary judgment. The defendants also filed responses to the plaintiff's motions, as well as a reply to their motion for summary judgment. On January 31, 2011 the magistrate judge filed a report and recommendation, addressing the defendants' motion to dismiss

-7-

and for protective order, and the plaintiff's motions to strike and for relief pursuant to then-Rule 56(f).

Judge Hluchaniuk recommended: (1) granting the motion for summary judgment based on failure to exhaust administrative remedies as to defendants Bauman and Sherry, and dismissing the claims against them with prejudice; (2) denying the motion for summary judgment based on failure to exhaust administrative remedies as to defendant Werner; (3) granting the motion for summary judgment on the First Amendment retaliation claims as to defendants Birkett, Bearss, and Krajnik because the plaintiff did not engage in protected conduct in speaking to the *Esquire* reporter; (4) granting the motion for summary judgment as to the mail processing and related constitutional and statutory claims as to all defendants; (5) dismissing all claims against the defendants in their official capacity; and (6) denying the defendants' motion for summary judgment based on qualified immunity because they failed to develop the argument.

Both the defendants and the plaintiff filed timely objections, and the plaintiff additionally filed a response to the defendants' objections.

On February 22, 2011, defendant Werner filed a second motion for summary judgment, although he never obtained permission to do so as required by E.D. Mich. LR 7.1(b)(2).  In that motion, Werner argued that Murphy's First Amendment retaliation claim against him should be dismissed because (1) an RPA hold does not equate to an adverse action; (2) Murphy cannot show a causal connection between his protected conduct — filing a lawsuit against Machulis, a fellow prison worker approximately 17 years ago — and any adverse action; and (3) even if adding a RPA hold constituted adverse action, Werner, as an Assistant Resident Unit Supervisor (ARUS), does not decide which prisoners in administrative segregation have RPA holds.  The plaintiff responded

arguing that addition of a RPA hold constitutes adverse action and that he has presented evidence of a causal connection between the protected activity and the adverse action.

Judge Michelson filed a report on July 29, 2011 recommending that the motion be denied. Defendant Werner filed timely objections, and the plaintiff has been trying to reply, although he says he has been hampered by his lack of access to legal materials.

## II.

Objections to a report and recommendation are reviewed *de novo*.  28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement."  *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006).  "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995).  "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general."  *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

Courts generally will not consider arguments on review that were not raised before the magistrate judge.  As the Sixth Circuit has explained in a similar circumstance:

> Petitioner did not raise this [new] claim in his initial § 2255 motion.  Rather, it was first raised in his supplemental objections to the magistrate judge's final Report and Recommendation.  The magistrate thus never had the opportunity to consider this issue.  Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.  *See United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988); *Anna Ready Mix, Inc. v.*

-9-

*N.E. Pierson Constr. Co., Inc.*, 747 F. Supp. 1299, 1302-03 (S.D. Ill. 1990). Hence, Petitioner's failure to raise this claim before the magistrate constitutes waiver.

*Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000); *see also Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) (stating that the Magistrate Judges Act was not intended "to give litigants an opportunity to run one version of their case past the magistrate, then another past the district court"), *rev'd on other grounds, United States v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992) (en banc); *Jesselson v. Outlet Assocs. of Williamsburg, Ltd. P'ship*, 784 F. Supp. 1223, 1228 (E.D. Va. 1991) ("A magistrate's decision should not be disturbed on the basis of arguments not presented to him.").

This Court reviews an order by a magistrate judge on a non-dispositive matter to determine whether the decision is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a) (stating that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the [magistrate judge's] order that is clearly erroneous or is contrary to law"); *United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001). A decision is "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Where there are two plausible views, a decision cannot be "clearly erroneous." *Anderson v. City of Bessemer City, N. Car.*, 470 U.S. 564, 573 (1985).

## A.  Procedural motions

Magistrate Judge Hluchaniuk filed a report on January 31, 2011 recommending that the plaintiff's motion to strike defendants' affidavits, the plaintiff's motion for relief under Federal Rule of Civil Procedure 56(f) [now 56(d)], and the defendants' motion for protective order be denied.

The defendants object to that recommendation arguing that the request to stay discovery should be granted because the plaintiff's only remaining claim is that against defendant Werner, and none of the plaintiff's requested discovery relates to this issue. The defendants' objection is not well taken. Although a majority of the plaintiff's requested discovery concerns claims that will be dismissed, the Court does not grant summary judgment on the First Amendment retaliation claims against defendants Birkett, Bearss, and Krajnik, and the plaintiff specifically seeks discovery to support his claim against defendant Werner. The plaintiff is entitled to that discovery, which may proceed according to a schedule to be established by the magistrate judge.

### B.  First motion for summary judgment

#### 1.  Defendant Werner's failure-to-exhaust argument

With respect to the defendants' motion for summary judgment, the magistrate judge recommends denying the motion for summary judgment based on failure to exhaust administrative remedies as to defendant Werner because there remains a genuine issue of material fact as to whether the plaintiff exhausted his administrative remedies. The defendants have not objected to that part of the report and recommendation and the time for doing so has passed. A party's failure to file objections to the report and recommendation waives any further right to appeal. *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Likewise, the failure to object to an unfavorable portion of the magistrate judge's report releases the Court from its duty to independently review the issue. *Thomas v. Arn*, 474 U.S. 140, 152 (1985). The Court will adopt that part of the recommendation.

#### 2.  Defendants Bauman's and Sherry's failure-to-exhaust argument

-11-

The magistrate judge recommends granting the motion for summary judgment based on failure to exhaust administrative remedies as to defendants Bauman and Sherry, and dismissing the claims against them with prejudice. The magistrate judge found that the plaintiff's grievances against these defendants were rejected by the prison as untimely all the way through Step III. The magistrate notes that ordinarily, dismissal of claims based on a failure to exhaust administrative remedies is made without prejudice, but that dismissal with prejudice is appropriate where a claim has been properly rejected by the prison grievance system on procedural grounds.

The plaintiff objects to that part of the recommendation, arguing that he properly and timely exhausted his administrative grievance as to defendants Bauman and Sherry because he did not learn about their acts of retaliation until he had access to an e-mail message in which they discussed the *Esquire* article.

This Prison Litigation Reform Act's (PLRA) exhaustion requirement, 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."), is mandatory and applies to all suits regarding prison conditions, regardless of the nature of the wrong or the type of relief sought. *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). "Exhaustion" under the PLRA means "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "Proper exhaustion" means "compliance with an agency's deadlines and other critical procedural rules . . . ." *Id.* at 90.

However, the Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their

complaints." *Jones v. Bock*, 549 U.S. 199, 216 (2007).  This affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants.  *Ibid.*

Since the Supreme Court decided *Jones v. Bock*, the Sixth Circuit has stated that courts ought not impose severe technical requirements on prisoners who comply with the spirit and purpose of the administrative exhaustion rules.  "[I]t is sufficient for a court to find that a prisoner's [grievance] gave prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint."  *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006) (internal quotation marks and citation omitted).

A fair indicator that the purpose of the grievance was fulfilled is the prison's response to the inmate's complaint.  If the information in the grievance is too vague or imprecise, a response so indicating would tell the interested parties that more detail is necessary.  However, when the prison officials address the merits of the prisoner's complaint without even mentioning a problem identifying the object of the grievance, the administrative system has worked and the prison officials have had the "opportunity to correct [their] own mistakes."  *Woodford*, 548 U.S. at 89 (internal citation and quotation marks omitted).

The record indicates that on October 9, 2009, the plaintiff submitted a Step I grievance

> premised upon retaliation by MDOC Officials Catherine Bauman . . . [and] Jeri Ann Sherry . . . in violation of [his] First and Fourteenth Amendment rights under the United States Constition, clearly established law and MDOC Policy directives, where they acted individually and/or collectively in placing an RPA hold on [him] as punishment for [his] cooperation with the August 2008 Esquire Magazine article . . . .

Defs.' Mot. for Summ. J., Ex. 4, Grievance LMF 09-10-3413-28e at 1.  In his grievance, the plaintiff contends that it was not until September 28, 2009, when a FOIA copy was provided to him, that he discovered the e-mail exchange between Bauman and Sherry, dated November 26, 2008, in which

-13-

Bauman requested Sherry to place the plaintiff on an RPA hold.  The plaintiff's grievance alleges

that the actions of Bauman and Sherry were clearly retaliatory to his exercise of his first amendment

rights in participating in the *Esquire Magazine* article.

The plaintiff's Step I grievance was rejected by the prison officials as untimely.  The

rejection stated:

> This grievance is being rejected because the date of the incident you have listed is
> not within the time limits as provided in PD 03.02.130, for processing.  Policy allows
> 7 business days from the date of the incident or the date the prisoner became aware
> of a grievable issue, to file a grievance.  The grievant became aware of the RPA hold
> back in October of 2008 and could and should have grieved the RPA hold then.
> There is also no policy violation of when he was placed on RPA hold, as there is no
> time limit for placing a prisoner on this status.  Grievance rejected according to
> policy.

*Id.* at 4.

The plaintiff filed a Step II grievance on November 2, 2009 in which he argued that his Step

I grievance was timely, as it was filed within 7 days of discovering the factual basis for his

complaint.  The plaintiff asserted that although it is true he was aware of his RPA hold in 2008, he

was not aware of the e-mail between Bauman and Sherry that indicates his RPA hold resulted from

retaliation for his participation in the *Esquire* article.  The prison rejected the plaintiff's Step II

grievance, noting, once again, that the plaintiff was aware of his RPA hold in 2008 and should have

filed his grievance then.  The prison did not address the plaintiff's assertion that he was not aware

of the retaliatory nature of the hold until late September 2009.  The rejection is signed by Catherine

Bauman.

The plaintiff filed a Step III grievance on November 25, 2009, arguing that the prison had

failed to address the merits of his two previously-filed grievances.  The plaintiff also argued that

pursuant to PD 03.02.130(U), which states that staff who are implicated in the substance of a

-14-

grievance shall not participate in any capacity in the grievance investigation, Catherine Bauman should not have been the respondent to his step II grievance. The prison rejected the plaintiff's Step III grievance, stating that the responses he received at Steps I and II reflect that his issues "were in fact considered and appropriately investigated at the facility level," and that as no additional information or basis for relief was submitted in his step III grievance, the step II decision rejecting his grievance would be upheld. *Id.* at 11.

In recommending that summary judgment be granted to defendants Bauman and Sherry, the magistrate judge noted that the plaintiff has not offered any evidence to suggest that those rejections were improper and therefore failed to create a genuine issue of material fact. MDOC Policy Directive 03.02.130(P) states that before filing a written grievance, the prisoner,"within two business days," must try to resolve the issue with an appropriate staff member. The plaintiff does not contest the prison's assertion that he was aware of the RPA hold in October 2008. But his argument that he did not learn of the retaliation issue until late September 2009 suffers from at least two notable defects.

First, the prison guidelines state that prisoners are entitled to file grievances regarding "grievable issues." The e-mail between defendants Bauman and Sherry does not evidence retaliation or any other type of wrongdoing regarding the prisoner, and therefore it does not create a grievable issue entitling the plaintiff to have filed his grievance in the first place. The e-mail exchange between the defendants merely demonstrates that both considered the plaintiff's attempted escape serious behavior warranting an RPA hold. The e-mail does not mention the *Esquire* article or in any way reflect a desire by the two to retaliate against the plaintiff for participating in its creation. That the e-mail exchange occurred after the article's publication is not, without more, evidence of

-15-

retaliation. Assuming, *arguendo*, that both defendants had only become aware of the plaintiff's attempted escape after reading the *Esquire* article, their desire to place him on an RPA hold could very reasonably have been based upon the plaintiff's behavior itself and not a desire to punish him. This is exactly what the e-mail conveys. Because the email does not provide any new grounds by which the plaintiff was entitled to protest his RPA hold, the plaintiff's grievances did not comply with PD 03.02.130's time limit.

Second, the plaintiff asserts facts that indicate he had reasons to suspect retaliation by defendant Sherry months before. The plaintiff contends that he spoke with her in January 2009. At that time, he asked her how long he would be required to remain in administrative segregation, to which the plaintiff alleges that she responded, "I don't make deals. All I can tell you is that it's too soon. You didn't do yourself any favor with that magazine story." Compl. ¶ 55. Therefore, as early as January 2009 the plaintiff had grounds to suspect that he was being held in administrative segregation under an RPA hold by defendant Sherry in retaliation for the article. The plaintiff delayed in filing a grievance against her until October 2009 — almost eleven months later. His grievance was untimely and failed to comply with the grievance procedures of the prison.

The Court agrees, therefore, with the magistrate judge that the complaint against defendants Bauman and Sherry should be dismissed and overrules the plaintiff's objection to that part of the recommendation. The plaintiff has not taken any issue with the recommendation that the dismissal should be with prejudice. The magistrate judge reasoned that because an untimely grievance cannot be revived, the matter is at an end and the dismissal of the claim should be with prejudice, citing *Kikumura v. Osagie*, 461 F.3d 1269, 1290 (10th Cir. 2006), *overruled on other grounds by Robbins*

-16-

*v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). On the facts of the present case, the Court adopts that part of the recommendation as well.

### 3. Retaliation claim against defendants Birkett, Bearss, and Krajnik

The magistrate judge recommends granting the motion for summary judgment on the First Amendment retaliation claims as to defendants Birkett, Bearss, and Krajnik because the speech cited by the plaintiff (his participation in the *Esquire* article) is not protected speech under the First Amendment. The plaintiff objects, arguing that these retaliation claims do not fail as a matter of law where (a) the defendants have not shown that they would have taken the same action absent the protected conduct and (b) the plaintiff's communications with *Esquire* is protected conduct.

The defendants do not argue that the plaintiff's participation in the *Esquire* article was not a protected activity. Indeed, the defendants appear to concede that the activity was protected, stating that "prison officials authorized, cooperated and participated in the interviews forming the basis of the article for which Murphy claim[s] he is being punished." Defs.' Mot. for Summ. J. at 8. The defendants base their motion for summary judgment on the grounds that the plaintiff failed to exhaust his administrative remedies against two defendants (Bauman and Sherry), and that the plaintiff is unable to establish a nexus between his protected speech and the allegedly retaliatory acts of the other three defendants (Birkett, Bearss, and Krajnik).

The magistrate judge's discussion of the protected speech issue was made *sua sponte*. In the Sixth Circuit, a district court may *sua sponte* grant a motion for summary judgment on grounds not urged by the parties "so long as 'the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court.'" *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005) (quoting *Shelby Cnty.*

-17-

*Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000)); *see also Excel Energy, Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959 (6th Cir. 2007) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 204 (6th Cir. 1998)).  The plaintiff was not afforded that opportunity in this case.  Because the defendants' legal strategy conceded that the plaintiff's speech was protected, the plaintiff was effectively foreclosed from presenting legal arguments supporting the protected nature of his speech.  Briefing of that point is not located elsewhere on the record.  Therefore, the requirements of *Bennett* have not been met to justify the Court's raising the issue of protected speech *sua sponte*.

Moreover, the Court does not agree that the plaintiff's statements in the *Esquire* article are unprotected speech under the First Amendment.  The Supreme Court has stated that, "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *Smith v. Campbell*, 250 F.3d 1032, 1036 (6th Cir. 2001).  Those legitimate policies and goals include the maintenance of internal security within the facilities themselves.  *Pell*, 417 U.S. at 822-23.  The magistrate judge focused on the effect the plaintiff's statement about his escape attempt might have within the prison system.  However, the plaintiff did not direct his statements to fellow inmates.  Rather, he spoke out on issues relating to prison security and was critical of the conduct of MDOC personnel, which resulted in his near-successful prison break.

The defendants have never contended that the plaintiff's statements in the *Esquire* article trenched upon "the legitimate penological objectives of the corrections system."  The defendants certainly could have restricted press access to the plaintiff concerning his attempted prison escape. *See Pell*, 417 U.S. at 834-35.  Instead, MDOC officials facilitated that contact.  To suggest that

-18-

prison officials could retaliate against the plaintiff for the criticism he leveled against them is not consistent with First Amendment principles.  Prison security certainly is a matter of public concern.  In *Campbell v. Arkansas Department of Correction*, 155 F.3d 950 (8th Cir. 1998), for instance, the former warden of a maximum security unit brought suit after he was demoted for the amount of press his unit was receiving and for speaking with the press about security issues.  The court stated, "The proper functioning of a maximum security prison with death sentenced prisoners is a matter of significant concern to the larger community, as are the existence of corruption and dangerous working conditions in a prison and inmate access to tools, weapons, and flammable substances that could facilitate violence and escape."  *Id.* at 958.   In *Crawford-El v. Britton*, 93 F.3d 813, 825-26 (D.C. Cir. 1996), *vacated on other grounds by* 523 U.S. 574, the court held that a prisoner's criticism of the prison administration in communications with the press was protected by the First Amendment.  In *Mascetta v. Miranda*, 957 F. Supp. 1346 (S.D.N.Y. 1997), the court held that a correction officer's statement on lax prison security was protected speech because it rose to the level of public concern.  And in *Jordan v. Pugh*, 504 F. Supp. 2d 1109 (D. Colo. 2007), the court found that allowing a prisoner to publish under a byline in the news media does not present a particular security risk based on the evidence in the record in that case.

The question remains, however, whether the record demonstrates a fact question on the causation element of the plaintiff's retaliation claim.  In must be remembered that "retaliation 'rarely can be supported with direct evidence of intent.'"  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987)).  That is why "[c]ircumstantial evidence, like the timing of events or the disparate treatment of similarly situated individuals, is

appropriate" to consider when determining whether a genuine issue of fact on that element of a First Amendment retaliation claim. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (en banc).

In his complaint, the plaintiff sets forth the following facts surrounding the alleged retaliation by defendants Birkett, Bearss, and Krajnik. The plaintiff claims that in May 2008, he was given one of three "coveted" administrative segregation work assignments as a porter/painter/laundry worker. Compl. ¶ 56. This position would potentially have afforded him an earlier release from administrative segregation and paid a salary of $65 per month. The plaintiff alleges that in late July, he personally observed the three defendants and other SMF staff reading the *Esquire* article in defendant Bearss's office. On July 29, he was summoned into defendant Bearss's office, where he met with all three defendants. Defendant Birkett scolded the plaintiff for his participation in the article, telling the plaintiff that he made the department of corrections "look bad" and that he would stay in administrative segregation a long time because of it. That same day, defendant Bearss recommended to defendant Birkett that the plaintiff be terminated from his work assignment. The plaintiff was terminated the next day. On July 31, the plaintiff confronted defendant Bearss about his termination. Defendant Bearss told him that he should have "thought about it" before he "did that article," and that "everyone agreed" to his termination. Compl. ¶ 64.

The defendants argue that they had legitimate grounds to terminate the plaintiff from his position, and that they would have taken the same action regardless of the plaintiff's protected speech. The defendants argue that the plaintiff's work assignment became a 30-day conditional assignment following his first work evaluation on June 30, 2008, in which it was noted that the prisoner "continues to be out moving around during officer escorts after numerous warnings." Defs.' Mot. for Summ. J. at 8. The defendants contend that "[b]y the time [the plaintiff's] monthly

-20-

work evaluation came around, [he] had been found in possession of contraband which was uncovered following a routine search." *Id.* at 8-9. The plaintiff was terminated "due to security reasons," Defs.' Mot. for Summ J., Ex. 8-B, and the following comments were entered in his work assignment evaluation form:

> Prisoner Murphy was an excellent porter however during routine shakedown of prisoner Murphy's cell and the unit laundry room his area of control several items were found that prisoner is not allowed to possess extra blankets, fan, garbage bags, pillow stuffing, etc. Prisoner is extreme escape risk and has violated his position of trust as unit porter by taking items while on assignment for his own personal use. Request termination.

*Ibid.* The defendants argue that it was the plaintiff's possession of contraband that motivated them to terminate the prisoner from his job assignment.

The plaintiff responds that he was informed by defendant Bearss that the June 30, 2008 evaluation would not be placed in his prisoner file because it had been completed prematurely, contrary to the two-month initial review set forth in PD 05.01.100. The plaintiff also takes issue with the integrity of the evaluation. The plaintiff also asserts that the defendants' reason for terminating his employment was pretextual as he was never issued any misconduct for contraband, a notice of intent, or a Contraband Removal Form. He contends this is because he was actually given permission to possess the items the work assignment evaluation lists as contraband. Pl.'s Resp. to Defs.' Mot. for Summ. J., Ex. 2, Murphy Aff. ¶ 22. The plaintiff argues that "had the alleged contraband been defendants' true reason for termination, it's more likely than not that they would have documented the contraband, and would have terminated him weeks before — when the items alleged to be contraband were actually found." *Id.* at 8.

The Court believes that the plaintiff has come forward with sufficient facts from which the defendants' retaliatory motives can be found, and a fact question exists whether the defendants'

stated reasons for removing the plaintiff from his prison job were a pretext for retaliation. Therefore, the Court will deny the motion for summary judgment on the retaliation claim against defendants Birkett, Bearss, and Krajnik.

### 4. Mail Restriction Claims

The magistrate judge recommends granting the motion for summary judgment as to the mail processing and related constitutional claims as to all defendants because the *Esquire* article constituted properly restricted material; the *Codex Magica* contained information on how to write letters in code and was therefore properly restricted material; the plaintiff fails to identify a substantial burden placed on the exercise of his religion; and the plaintiff fails to demonstrate that the available state procedures for redressing his denied access to the magazine and book were not adequate. The plaintiff concedes the point as to the *Esquire* article, but he objects, arguing that he has sufficiently pleaded that the defendants' actions imposed a substantial burden on his religious practices and had stated individual free exercise, Religious Land Use and Institutionalized Persons Act (RLUIPA), free speech, and due process claims with respect to the censorship of his religious book *Codex Magica*.

### a. RLUIPA claim

The Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc-1, "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). It achieves this goal by prohibiting the government from imposing a

> substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless

-22-

> the government demonstrates that imposition of the burden on that person is in
> furtherance of a compelling governmental interest[,] and is the least restrictive means
> of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). "An action of a prison official 'will be classified as a substantial burden when that action forced an individual to choose between following the precepts of [his] religion and forfeiting benefits or when the action in question placed substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Hayes v. Tennessee*, 424 F. App'x 546, 554-55 (6th Cir. 2011) (quoting *Barhite v. Caruso*, 377 F. App'x 508, 511 (6th Cir. 2010)) (internal quotation marks omitted); *see also Adkins v. Kaspar*, 393 F.3d 559, 569-70 (5th Cir. 2004) (holding that a regulation constituted a substantial burden "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs"). "However, 'prison security is a compelling state interest' and 'deference is due to institutional officials' expertise in this area.'" *Hayes*, 424 F. App'x at 554 (quoting *Cutter*, 544 U.S. at 725 n.13). The RLUIPA does not subjugate a correctional facility's "need to maintain order and safety" to the "accommodation of religious observances." *Cutter*, 544 U.S. at 722.

> If a plaintiff produces prima facie evidence to support a claim alleging a violation of
> the Free Exercise Clause or a violation of section 2000cc . . ., the government shall
> bear the burden of persuasion on any element of the claim, except that the plaintiff
> shall bear the burden of persuasion on whether the law (including a regulation) or
> government practice that is challenged by the claim substantially burdens the
> plaintiff's exercise of religion.

42 U.S.C. § 2000cc-2.

The defendants argue that the plaintiff does not have an absolute right to practice his religion in the manner he desires; rather, the Court must balance his right to freely exercise his religion against the state's legitimate interest in operating its prisons, and that the plaintiff has alternate means of practicing his religion without possessing a book that contains information on how to write

-23-

letters in code.  The plaintiff argues that the defendants did not identify a legitimate security concern served by censorship of the *Codex Magica* beyond a generalized reference to a security threat and a reference to written escape plans.  Moreover, the defendants' argument must fail, the plaintiff contends, because defendant Lockhart's reason for placing the text on the Restricted Publications List — "Threat to order/security of institution; contains information on how to write letters in code," Defs.' Mot. for Summ. J., Ex. 13-B — differed from defendant Berry's initial justification for rejecting the text and from defendant Bowerson's reason for affirming, namely that the book was written in codes and symbols that prevented the staff from conducting an effective search.

The magistrate judge concluded that the defendants were entitled to summary judgment because the plaintiff failed to identify any burden, let alone a substantial one, placed on his exercise of religion.  The plaintiff objected, arguing that he has adequately alleged that censorship of his religious publication, *Codex Magica*, imposes a substantial burden on his religious exercise because he has been forced to forego education and knowledge central to his faith.  He contends that possession of the *Codex Magica* is critical to the exercise of his religious belief because it would help him identify the secret satanic signs, symbols, and hidden codes used by politicians and entertainers so that he might educate himself and others to their danger.

The magistrate judge reached a correct conclusion.  The plaintiff has not been forced to choose between following the tenets of his religion and forfeiting benefits; nor did the mail rejection place substantial pressure on the plaintiff to modify his behavior and to violate his beliefs.  Even if the mail rejection placed a substantial burden on the plaintiff, the rejection was justified by a legitimate penological interest in preventing texts containing instructions on how to write in code

from entering the prison.  The plaintiff's objection to dismissal of his RLUIPA claim is overruled and that part of the magistrate judge's recommendation is adopted.

### b.  Free exercise claim

Although prisoners retain their First Amendment right to the free exercise of their religion. *Cruz v. Beto*, 405 U.S. 319, 322 n.2 (1972); *Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001), the "circumstances of prison life may require some restrictions on prisoners' exercise of their religious beliefs," *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985).  A court "must balance the prisoners' constitutionally protected interest in the free exercise of their religious beliefs against the state's legitimate interests in operating its prisons."  *Ibid.*  "As maintaining security, order, and discipline are essential goals of a corrections system, prison officials are accorded wide latitude in the adoption and application of prison policies and procedures."  *Hayes*, 424 F. App'x at 550. "[B]ecause the problems of prisons in America are complex and intractable, and because courts are particularly ill equipped to deal with these problems, [the Supreme Court] generally ha[s] deferred to the judgments of prison officials in upholding these regulations against constitutional challenge." *Shaw v. Murphy*, 532 U.S. 223, 229 (2001) (internal quotation marks and citations omitted).

Prison regulations are valid if they are "reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  The following four factors are relevant in the analysis:

> First, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." [*Turner*, 482 U.S. at 89] (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).  Second, the court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90.  Third, the court should weigh the impact that the asserted constitutional right will have on the rights of prison guards and other inmates, as well as the allocation of prison resources. *Id.* Fourth, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation."

-25-

*Hayes*, 424 F. App'x at 549-50.  Additionally, "[a] prisoner alleging that the actions of prison officials violate his religious beliefs must show that 'the belief or practice asserted is religious in the person's own scheme of things' and is 'sincerely held.'" *Flagner*, 241 F.3d at 481 (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)).

It is without question that a prison has a legitimate penological interest in limiting prisoners' access to books that include instructions on how to write in code.  The safety and security of other prisoners and the prison staff depend on it.  The only way to protect this interest is to reject the *Codex Magica*.  The Court overrules the plaintiff's objection and adopts that part of the magistrate judge's recommendation.

### c.  Free speech claim

The plaintiff's complaint alleges that censorship of the *Codex Magica* violates his free speech right to hear information.  Compl. ¶ 145.  The defendants argue that such a right does not exist; the plaintiff has not alleged facts supporting a violation of the First Amendment Free Speech Clause; and the prison officials' decision to reject the *Codex Magica* furthered a legitimate penological interest.  Defs.' Mot. for Summ. J. at 13.  The plaintiff argues that the "right to hear" is no less protected than the right to speak and that the censorship of his religious publication violates his right to free speech because the censorship was not related to any legitimate penological concern.  The magistrate judge did not address the plaintiff's free speech claim in his Report and Recommendation.

The First Amendment prohibits states from "abridging the freedom of speech."  U.S. Const. amend. I.  "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment."  *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008).  A prisoner retains

only those First Amendment rights "that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell*, 417 U.S. at 822.

As discussed above, the defendant prison officials had a legitimate penological objective in censoring the *Codex Magica*. The plaintiff's free speech claim, therefore, must be dismissed.

### d. Due process claim

The plaintiff argues that he is not required to plead and prove that available state procedures for redressing the wrong are not adequate because the prison's censorship deprived him of a liberty interest, as opposed to a property interest. He contends that PD 05.03.118 is unconstitutional with respect to the censorship of the book *Codex Magica*.

Prisoners have a liberty interest in receiving their mail. *Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010). Even so, a due process claim will not stand where a prisoner has been denied his mail wrongfully when there is an adequate "state remedy provided to correct the deprivation." *Ibid.* (citing *Parratt v. Taylor*, 451 U.S. 527, 538 (1981)).

The magistrate judge was correct. The plaintiff has not shown a lack of adequate post-deprivation remedies with respect to the censorship of the *Codex Magica*. In fact, the magistrate judge described the extensive post-deprivation procedural protections afforded to all prisoners. The plaintiff also seeks leave to amend his complaint to allege an inadequate state procedure. The plaintiff's request to amend will be denied, however, because it is clearly futile. As for the plaintiff's constitutional challenge to the Prisoner Mail regulations, the prison, for the reasons discussed above, has a valid penological interest in restricting access to the *Codex Magica*; therefore, PD 05.03.118 cannot be unconstitutional as applied on the ground that it prevents the plaintiff's access to it. The plaintiff's objection is overruled and the Court adopts that part of the

magistrate judge's report and recommendation.  The defendants' motion for summary judgment with respect to the plaintiff's claims stemming from censorship of the *Codex Magica* is granted.

### 5.  Official capacity claims

The magistrate judge recommends dismissing all claims against the defendants in their official capacity because this amounts to a suit against the state, which is barred by the Eleventh Amendment unless the state has waived its sovereign immunity or consented to be sued in federal court, neither of which have occurred in this case.  The plaintiff has not objected to that part of the report and recommendation and the time for doing so has passed.  A party's failure to file objections to the report and recommendation waives any further right to appeal.  *Smith*, 829 F.2d at 1373. Likewise, the failure to object to an unfavorable portion of the magistrate judge's report releases the Court from its duty to independently review the issue.  *Thomas*, 474 U.S. at 152.  The Court will adopt that part of the recommendation.

### 6.  Qualified immunity

The magistrate judge recommends denying the defendants' motion for summary judgment based on qualified immunity, as the defendants have plead only a perfunctory qualified immunity defense, and therefore have not satisfied their burden of coming forward with specific facts or explanation of law sufficient to allow the Court to enter summary judgment in their favor.  The defendants object to the magistrate's conclusion that defendants Lockhart, Krajnik, Bearss, Birkett, and Bowerson are not entitled to a grant of qualified immunity on the grounds that the magistrate judge found they did not violate the plaintiff's constitutional rights.  The magistrate judge reached his conclusion based on the paucity of the defendants' arguments; he refused to make their arguments for them.

-28-

The Court agrees with the magistrate judge.  The defendants' qualified immunity argument is found in a single paragraph at the end of their brief.  They never developed the arguments, and the Court will not do so for them.  Their objection based on the argument that the failure of the plaintiff to show a violation of a constitutional right makes little sense, since such a finding precludes relief to the plaintiff in all events.  However, because the qualified immunity arguments were presented to the magistrate judge in name only, the Court must agree with his determination that it has not been established in this record.

### 7.  Segregation claim

The defendants' motion for summary judgment does not address the plaintiff's administrative-segregation due process claim.   Therefore, it survives the motion.  The claim will be construed only against defendant Jeri-Ann Sherry because, as Regional Prison Administrator, she is the only defendant capable of providing relief on this claim.

### C.  Defendant Werner's second motion for summary judgment

Defendant Werner's second motion for summary judgment was filed without leave of court. LR 7.1(b)(2) states: "A party must obtain leave of court to file more than one motion for summary judgment."  The failure to obtain such leave is fatal to the defendant's second motion for summary judgment.

The magistrate judge recommends that the defendant's motion for summary judgment be denied.  First, the magistrate judge noted that neither party disputed that Murphy's decision to file a lawsuit against Machulis was protected conduct.

Second, relying on *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (holding that an official action is adverse "only if it could deter a person of ordinary firmness from the exercise of

-29-

the right at stake" (internal quotation marks omitted)), and *Bey v. Luoma*, No. 07-60, 2008 WL 4534427, at *6 (W.D. Mich. Sept. 30, 2008) (implicitly finding that in some circumstances a lengthy confinement to administrative segregation could constitute an adverse action), the magistrate concluded that there is a genuine issue of material fact as to whether Werner's placement of a RPA hold on the plaintiff constitutes adverse action.   The magistrate judge found support for her conclusion in the fact that only certain prison officials could place a prisoner on RPA hold.

Third, the magistrate judge, after reviewing the circuit law on temporal proximity and causation, concluded that the plaintiff raised a genuine issue of material fact as to the causal element of his retaliation claim.  The magistrate judge found good reason to believe that Werner's "clerical mistake" argument was suggestive of motive and causation, especially given the fact that defendant Bauman, a Correctional Facilities Administration Deputy Director at the time, emailed defendant Sherry, a RPA at the time, to initiate putting a RPA hold on plaintiff via the proper procedures *after* defendant Werner had changed Murphy's classification to include a RPA hold.

The defendant has stated four objections: (1) the plaintiff has failed to set forth a valid First Amendment retaliation claim against defendant Werner; (2) defendant Werner did not have knowledge of the protected conduct; (3) defendant Werner did not have the authority to bring about the adverse action; and (4) defendant Werner is entitled to a grant of qualified immunity because the plaintiff has not set forth a valid First Amendment retaliation claim.

The defendant's objections merely restate the arguments he made in his summary judgment motion.  Magistrate Judge Michelson's report is well reasoned, supported by the facts in this case, and in accordance with the current law on First Amendment retaliation.  The Court adopts the recommendation as its own decision.

-30-

III.

The Court finds that Magistrate Judge Hluchaniuk correctly decided the exhaustion and censorship, and qualified immunity issues, and disagrees with the conclusions on the First Amendment retaliation claim.  The defendant's objections have no merit, and the plaintiff's objections only partially so.  The Court agrees with the report and recommendation of Magistrate Judge Michelson on defendant Werner's second motion for summary judgment.

Accordingly, it is **ORDERED** that the Magistrate Judge Hluchaniuk's report and recommendation [dkt #54] is **ADOPTED IN PART AND REJECTED IN PART**.

It is further **ORDERED** that the defendants' objections to the magistrate judge's report and recommendation [dkt #57] are **OVERRULED**.

It is further **ORDERED** that the plaintiff's objections to the magistrate judge's report and recommendation [dkt #63] are **OVERRULED IN PART**.

It is further **ORDERED** that the defendants' first motion for summary judgment [dkt. #28] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that the plaintiff's claims against defendants Bauman and Sherry are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the plaintiff's mail processing claims as to the *Esquire* and *Codex Magica* publications, and the official capacity claims are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the Magistrate Judge Michelson's report and recommendation [dkt #78] is **ADOPTED**.

-31-

It is further **ORDERED** that defendant Werner's objections to the magistrate judge's report and recommendation [dkt #80] are **OVERRULED**.

It is further **ORDERED** that defendant Werner's second motion for summary judgment [dkt. #59] is **DENIED**.

It is further **ORDERED** that the motions for protective order [dkt. #29], to strike affidavits [dkt. #39], and for relief under Federal Rule of Civil Procedure 56(f) [dkt. #41] are **DENIED**.

It is further **ORDERED** that the matter is referred to Magistrate Judge Laurie J. Michelson under the previous reference order to ready the matter for trial, and to conduct a trial if the parties consent under 28 U.S.C. § 626(b)(1)(c).

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   September 30, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 30, 2011.

s/Deborah R. Tofil
DEBORAH R. TOFIL